2001 OK CIV APP 5

**Barbara ENGLISH, Plaintiff/Appellee,**

v.

**WAL–MART STORES, INC., Defendant/Appellant.**

**No. 94,236.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Decided Dec. 19, 2000.

Rodney D. Watson, Rodney D. Watson & Associates, P.C., Norman, OK, for Plaintiff/Appellee.

Michael W. Brewer, Travis W. Watkins, Hiltgen & Brewer, P.C., Oklahoma City, OK, for Defendant/Appellant.

Opinion by KENNETH L. BUETTNER, Judge:

¶ 1 Defendant/Appellant Wal–Mart Stores, Inc. (Wal–Mart) appeals from the trial court's decision granting a new trial to Plaintiff/Appellee Barbara English after a jury verdict was entered in favor of Wal–Mart. Because we find that the trial court abused its discretion in granting a new trial, we reverse.

¶ 2 English filed suit against Wal–Mart October 10, 1997. English alleged she was injured when something fell on her head while she shopped at the Pauls Valley Wal–Mart store October 9, 1995. English also filed an application to file her petition out of time. English argued that her counsel's legal assistant entered the Garvin County Courthouse at 4:20 p.m. on October 9, 1997 and discovered that the court clerk's office was already closed. English further alleged that the legal assistant located Judge Candace Blaylock's bailiff who accompanied her to the closed court clerk's office and that they looked in the window and discovered that the court clerk's office clock was fast and that the legal assistant was in fact at the court clerk's office before the 4:30 p.m. official closing time of the Garvin County Court Clerk's office. A court minute filed October 10, 1997 by Judge Blaylock found good cause existed for the filing on October 10, 1997 to relate back to October 9, 1997, so that the petition came within the two year statute of limitations. See 12 O.S.1991 § 95(3).

¶ 3 On October 29, 1997, Wal–Mart filed its motion to dismiss based on the statute of limitations, also styled as a motion to vacate the order allowing the petition to be filed out of time. English filed her response November 13, 1997. The motion to dismiss was overruled December 5, 1997.

¶ 4 Jury trial was held October 26–27, 1999. At trial, English testified that on October 9, 1995 she went to the Paul's Valley Wal–Mart store during her work lunch break in order to buy dog food. English explained that as she was rummaging through the cans of dog food looking for a particular flavor, something hit her on the head so hard that her knees buckled. English then screamed and a woman, who English believed to be a Wal–Mart employee, came to her aid and helped her lay down. English further explained that as she was lowered to the floor she saw a white box which she believes is the item that struck her. English stated that she then passed out and could not describe the box further. English testified that after she passed out, the next thing she remembers is waking up in the hospital emergency room. English conceded that she had never seen a box at Wal–Mart like the one she believed hit her either before or after her injury.

¶ 5 English further testified that when she woke up at the hospital she had pain in her head and neck, saw flashing bright lights and was nauseous. English was admitted to the hospital and was released two days later. English testified that she was diagnosed with a bulging disc in her neck. The medical records from English's emergency room visit following the alleged injury at Wal–Mart indicate that she had no bruising.

¶ 6 English testified that in 1997 she suffered a whiplash injury in a car accident. English testified that she had ridden horses all of her adult life, including after her alleged injury at Wal–Mart. English introduced photographs of herself riding horses and attending her grandsons' baseball games taken after her alleged injury at Wal–Mart. English explained that she had suffered numerous injuries, including broken ribs and a broken collar bone during her years of horse riding. English testified that at the time of trial she was employed part-time in home health care and also performed bookkeeping for the man with whom she resided.

¶ 7 English introduced as evidence all of her medical bills associated with the alleged injury. English also introduced the deposition testimony of Dr. Kent Hensley, who examined English at the request of Wal–Mart. Dr. Hensley noted that English had

suffered a serious back injury, a compression fracture, when she was bucked off of a horse in 1990. English testified that she wore a metal back brace for over a year following that injury. Dr. Hensley noted that Dr. Moore, who examined English when she was first taken to the Pauls Valley Hospital after the Wal–Mart incident, found no contusions or abrasions. Additionally, none of the doctors reported finding a knot on English's head or neck, despite her testimony of such a knot forming after she was hit at Wal–Mart. Dr. Hensley further noted that Dr. Moore performed a fundoscopic examination of the inside of English's eyes and found them to be normal. Dr. Hensley explained that the Pauls Valley Hospital report indicated that English suffered a mild concussion with headache and secondary nausea and vomiting. CAT scans and x-rays of her head and neck taken at the time were normal. Dr. Hensley noted that when English reported to the Norman Regional Hospital emergency room a few days after the alleged Wal–Mart injury she complained of headaches, neck pain and visual problems with her left eye, but the physician there, Dr. Hubbard, found no "abrasion, erythema, ecchymoses, or sign of trauma." Dr. Hubbard concluded, based on statements from English, that stress and social problems were "playing a big role" in her symptoms. Dr. Brashear in Norman did note in the left eye "a few vitreous floaters and a small hemorrhage off the nasal retinal artery of the left eye." English testified that approximately twice a year she suffers from eye hemorrhages. Dr. Hensley indicated those are different from the one discovered after the Wal–Mart incident and that they are not related. Dr. Hensley concluded that English had degenerative disc disease in her neck and low back due to age. Dr. Hensley reported that English's alleged injury at Wal–Mart is unlikely to have resulted in significant structural injury to her neck and back. Dr. Hensley also opined that it is unusual that a blow to the head, as described by English, would have resulted in a loss of consciousness without bruising. Dr. Hensley further stated that English's eye hemorrhage was "of uncertain relationship to this claimed injury." The medical evidence accordingly disputed the issue of causation of English's injuries.

¶ 8 At trial, during the testimony of ex-employee Don Wageman, who was manager of the Pauls Valley Wal–Mart on October 9, 1995, counsel for English questioned Wageman about the fact that nothing appears in the photos of the accident scene which might have been the object that fell on English. Counsel for English asked Wageman if it was possible that a Wal–Mart employee could have removed such an object from the area before the photos were taken. Wageman conceded that it was possible, but that he did not know who it could have been. Counsel for English then asked what that person's motive would have been. Wal–Mart objected to testimony regarding the possible motive of an unknown person. Counsel for English indicated that he was trying to get an explanation for the item being removed. Counsel for Wal–Mart responded that the testimony had been that the scene was not changed. The trial court responded in the presence of the jury: "I heard the testimony but I didn't believe it. I'm going to allow it." Wal–Mart's repeated objections to testimony regarding an unknown person's motive were overruled.

¶ 9 Immediately following the exchange regarding whether the scene was changed, Counsel for English attempted to elicit testimony from Wageman about changes in Wal–Mart store policy regarding overstocking merchandise on shelves. Wal–Mart objected that subsequent measures were irrelevant. The trial court called the attorneys to the bench where a conference was held out of the hearing of the jury. At that time, counsel for Wal–Mart moved for a mistrial based on the court's comments on the evidence. The court responded as follows:

> I will overrule your objection, Counsel. I heard the testimony, but it runs contrary to everything else in this case. That lady did not get a brain concussion and an eye hemorrhage from nothing happening to her, which is you old (sic) defense so far, and your defense so far has seemed absurd.

Wal–Mart again asked for a mistrial based on those comments by the court. The trial court responded:

> Trial Court: Your objection is overruled. If you're going to put up a defense like that, you need to be prepared for anybody to see what's wrong with it. And I did not believe that the scene was not changed, and it was proven that the scene was not changed because the basket and the purse were not in the picture and you own witness admitted it.
>
> Counsel for English: Your honor, for the record, since there has been a denial of the incident even occurring, how could this be a subsequent remedial measure?
>
> Trial Court: Right. Right. My point exactly. All right. The objection is overruled and your motion for mistrial is overruled.

At the conclusion of the trial, the court instructed the jury on *res ipsa loquitur*.[1] Nevertheless, the jury returned a verdict in favor of Wal–Mart.

¶ 10 English then timely filed a motion for new trial in which she alleged that the trial court's comments regarding the defense being absurd inflamed the passions and prejudices of the jury in favor of Wal–Mart. See 12 O.S.1991 § 651(4). English asserted that although the transcript indicates the exchange was outside of the hearing of the jury, that the trial court actually made a loud outburst at counsel for Wal–Mart which caused juror sympathy towards Wal–Mart. English further argued that the jury's verdict was unsupported by sufficient evidence. See 12 O.S.1991 § 651(6). English asserted that Wal–Mart presented insufficient evidence to rebut the evidence submitted by English. Finally, English argued that a new trial was warranted by statements made by counsel for Wal–Mart during closing argument, despite English's failure to object to those statements at trial. See 12 O.S.1991 § 651(4).

¶ 11 At the hearing on the motion for new trial, the trial court reiterated its view that the defense was absurd. The trial court also agreed with English that statements made by counsel for Wal–Mart during closing arguments warranted a mistrial, although English never objected to the statements at trial and no transcript of the closing argument was available at the time of the hearing on the motion for new trial. Finally, the trial court indicated that "there were Wal–Mart connections all throughout that jury," and that Wal–Mart's closing argument threatened the jury that Wal–Mart would leave Garvin County if the jury found for English. The court explained its belief that counsel for English was simply being "courteous" in failing to object to Wal–Mart's closing argument. The court therefore granted English's motion for new trial. It is from that order which Wal–Mart appeals.

¶ 12 Wal–Mart's first assertion of error is that the trial court abused its discretion in granting English's motion for new trial. Wal–Mart relies on *Bishop's Restaurants, Inc. of Tulsa v. Whomble*, 1960 OK 44, 355 P.2d 560. *Whomble* is factually similar to the instant case. In *Whomble*, the plaintiff was injured when a restaurant waiter pulled a chair out from behind the plaintiff as she was attempting to sit down in the chair. The jury returned a verdict for the defendant restaurant and the plaintiff sought a new trial on the grounds that the verdict was contrary to the evidence and that the verdict was so "flagrantly opposed to the evidence as to appear to have been the result of prejudice . . ." The trial court granted the motion for new trial on the grounds "that the verdict of the jury is unconscionable; the Court cannot approve it; the Court believes that there was no contributory negligence in this case and I am surprised that the jury could, by any stretch of the imagination, find contributory negligence in this case." The trial court further based its decision to grant a new trial on its finding that the contributory negligence instruction should not have been given.

---

1. "Res ipsa loquitur is a pattern of proof which may be applied when an injury is alleged to have been negligently inflicted and the harm is shown not to occur in the usual course of everyday conduct unless a person who controls the instru- mentality likely have produced that harm fails to exercise due care to prevent its occurrence." *Jackson v. Oklahoma Memorial Hospital*, 1995 OK 112, 909 P.2d 765, 770.

In *Whomble*, the Oklahoma Supreme Court determined that the evidence supported the giving of the contributory negligence instruction. The court further noted that in its exercise of discretion, the trial court may not give effect to its own will and subjective views in substitution for the will of the jury. The court found that the record was free of errors at trial and that the verdict was supported by the evidence and that, accordingly, the trial court had abused its discretion in granting the new trial motion.

¶ 13 Likewise, in the instant case, the evidence supported the jury's verdict. Further, English failed to object at trial to the alleged errors which the trial court identified in the hearing on the motion for new trial, and, we do not find the alleged errors to be errors in fact.

 ¶ 14 We first address the trial court's finding of bias in the jury. In its statements at the hearing on the motion for new trial, the trial court stated: "There were Wal–Mart connections all throughout that jury, as would be revealed by a transcript of the voir dire. It is hard to find anybody in Garvin County that does not have a monetary connection to Wal Mart." If that statement is accurate, then the proper time to investigate those connections is during voir dire. We have reviewed the transcript of voir dire and there are admitted connections with Wal–Mart. Two potential jurors stated they owned Wal–Mart stock. Each was questioned whether they could be fair in deciding the case. One of those jurors indicated she could not be fair and she was dismissed by the court. The other juror indicated he could decide the issue fairly. He was not challenged by English. Some of the potential jurors indicated that they shop at Wal–Mart, but each answered that they could be fair in their decision. One juror indicated that he does business with Wageman, the former Wal–Mart manager who was a witness in the case. Another juror stated that her fiancé had been hired by the Wal–Mart distribution center in Pauls Valley but had yet to begin work there. Each of these jurors indicated that they could decide the issues fairly and impartially. English failed to challenge any juror. Where a party fails to exercise its right to challenge jurors, that conduct indicates that the jury is acceptable to that party. *Brown v. Marker*, 1965 OK 172, 410 P.2d 61, 65.

¶ 15 Based on our review of voir dire, we find no indication that the jury panel was inherently biased in favor of Wal–Mart. The connections could have been favorable or unfavorable to Wal–Mart. There is no argument that any jurors were less than honest about the "connections." Plaintiff accepted the jury. If plaintiff's counsel or the trial court believed either party could not receive a fair trial in Garvin County, then the matter should have been addressed before trial not after a verdict in favor of one of the parties.

 ¶ 16 We next address the trial court's finding of misconduct in Wal–Mart's closing argument. It is apparent from the trial court's comments in the hearing on the motion for new trial that the court believed that the jury's connections to Wal Mart, coupled with counsel for Wal–Mart's closing argument, which the court believed to contain threats, constituted misconduct warranting a new trial. We have therefore read Wal Mart's closing argument in its entirety and find no threat that Wal–Mart might pull out of Garvin County in the event of a plaintiff's verdict. In her brief, English refers to Wal–Mart counsel's statement in his closing argument that the jury would be giving a message to everyone in Garvin County regarding the standards to which a merchant is held.[2]

---

**2.** The closing argument which English specifically cites as improper follows:

... going to decide what's reasonable, what's ordinary care and what are the standards that a merchant should be held to and that a person should be held to in Garvin County and you're going to have to live with that, and you're going to give that message to everybody in this county. Myrna Torrence is going to go back to the Wal–Mart store and those 120 associates

are going to ask her a question, What was the verdict, what did we do wrong. What did Wal–Mart do wrong? Think about that question.

... What did Wal–Mart do wrong? Myrna Torrence and those 120 associates and their families at the store are entitled to know that. And that's why we have courts of law and evidence to decide these types of disputes, because it's going to have an effect. There's no

However, when counsel for English made his rebuttal, he agreed that the jury should "send a message." More importantly, however, English failed to object to any part of Wal–Mart's closing statement. Failure to object or move for a mistrial at the time of allegedly prejudicial argument waives the alleged error and the party will be deemed to have taken its chances with the jury. *Bateman v. Glenn,* 1969 OK 158, 459 P.2d 854, 858; *Lawton Transit Mix, Inc. v. Larson,* 1969 OK 83, 455 P.2d 696, 698–9.

¶ 17 It is true that a stronger showing of abuse of discretion is required to reverse a grant of a new trial rather than a denial of a new trial. *Dominion Bank of Middle Tennessee v. Masterson,* 1996 OK 99, 928 P.2d 291, 294. However, upon comparison of the instant facts to other cases involving a grant of a new trial, it is evident that the trial court abused its discretion in the instant case. In *Masterson,* during voir dire a juror failed to disclose that he had been involved in other lawsuits and that the defendant's counsel had initiated garnishment proceedings against the juror. The Oklahoma Supreme Court noted that where a prospective juror gives false or misleading information so that counsel is precluded from inquiring completely regarding whether the juror is impartial, a new trial is warranted where the juror's misinformation has been shown to have caused an unjust verdict, citing *Stillwell v. Johnson,* 1954 OK 189, 272 P.2d 365, 368.

¶ 18 In *Propst v. Alexander,* 1995 OK 57, 898 P.2d 141, an injured mechanic brought both a workers' compensation claim against his employer as well as a negligence suit against the patron who injured him. In the negligence case, the trial court granted a motion in limine regarding mention of the workers' compensation case. However, the mechanic's surgeon accidentally mentioned workers' compensation while testifying. The mechanic's objections to this testimony and request for a mistrial were overruled. Further, the jury asked several questions about whether it could consider workers' compensation in its decision. After the verdict, in which the jury found the mechanic 49% contributorily negligent and awarded only 10% of the damages sought by the mechanic, he moved for a new trial, which was granted. The Supreme Court explained that a grant of a new trial should not be reversed "unless the record clearly shows that the trial court either erred on a pure and unmixed question of law or acted arbitrarily and capriciously." *Id.* at 144–145. Clearly, the instant facts are different from the prejudicial error caused by the injection of the issue of workers' compensation coverage into a negligence trial.

¶ 19 In *Public Service Company of Oklahoma v. Brown,* 1998 OK 121, 972 P.2d 354, the trial court granted a new trial based on the fact that it had failed to give defense counsel five minutes of rebuttal during closing argument after defense counsel elected to split its allotted twenty minutes of closing argument time. Defense counsel failed to object to the denial of rebuttal time until its motion for new trial and the trial court indicated it would have given the five minutes at trial if defense counsel would have reminded the court it had been reserved. The Oklahoma Supreme Court held that it is error to grant a new trial on the basis of harmless error and that the test for such error is the probability of a change in the outcome of the trial.

¶ 20 In the instant case, the trial court attacked Wal Mart's evidence and defense strategy, and yet Wal–Mart prevailed. After repeating its view that the defense was absurd, the trial court sought to substitute its own will for that of the jury in granting a new trial because it believed its actions against Wal–Mart somehow swayed the jury in favor of Wal Mart. It is unlikely, based on the evidence supporting the verdict and

doubt about it. Those associates talk to the other associates at the distribution center, and those 350 associates will talk to their family members. And Garvin County will know what are the standards of this community set by this jury today.
... they have to meet the burden on every single element of those jury instructions, and,

yeah, when you render a verdict, if you don't render a defense verdict, you are setting the standards in Garvin County. You are sending a message. Answer that question with, What did Wal–Mart do wrong, and the evidence before you is absolutely nothing. On that, you must render a defense verdict. Thank you.

based on the trial court's criticism of Wal–Mart's defense, that the court's conduct had any positive effect on the jury finding in favor of Wal–Mart. We note the following language regarding the role of the trial court in a jury trial:

A trial judge may not sit as a thirteenth juror. It matters not that the trial court or this court might or might not have reached a different conclusion.... The court may not substitute its judgment for that of the jury and the exercise of its function as a fact finding body. In so doing, the trial court in this case abused its discretion. Were a trial court permitted an unbridled prerogative to substitute its opinion for that of a jury, it would be tantamount to a partial abrogation of the right to trial by jury.

*Dodson v. Henderson Properties, Inc.*, 1985 OK 71, 708 P.2d 1064, 1068. We find that, based in part on the trial court's negative comments regarding Wal–Mart's defense, the trial court acted arbitrarily and capriciously in granting a new trial to English and therefore abused its discretion. We therefore reverse the grant of new trial and remand for judgment to be entered on the jury's verdict.[3]

¶ 21 Wal–Mart's remaining assertions of error are that the trial court erred in allowing English to file her petition one day after the expiration of the statute of limitations and that the trial court erred in overruling Wal–Mart's demurrer/motion for directed verdict. Because of the result reached in this opinion, we find analysis of those issues unnecessary.

¶ 22 REVERSED AND REMANDED.

¶ 23 JONES, P.J., and GARRETT, J., concur.

---

**3.** English argues that the fact that Wal–Mart moved for a mistrial on three occasions, because of trial court statements favoring English, proves the verdict was improperly rendered. It would be a unique set of circumstances which would support a new trial for a plaintiff because of trial court errors in favor of the plaintiff, or vice versa. This is not such a case.