2002 OK CIV APP 28

Tim HUTSON, as the Duly Appointed and Acting Representative of the ESTATE OF Raymond HUTSON, Deceased, Plaintiff/Appellant,

v.

Koteswar Rao SUREDDI, M.D., and Durant HMA, Inc., d/b/a Medical Center of Southeastern Oklahoma, Defendants/Appellees.

No. 95349.

Court of Civil Appeals of Oklahoma, Division No. 2.

July 24, 2001.

Rehearing Denied Dec. 10, 2001.

Certiorari Denied Feb. 20, 2002.

**994**

John C. McMurry, Oklahoma City, OK, for Plaintiff/Appellant.

Robert H. Mitchell, Michael Belanger, Robert H. Mitchell & Associates, Oklahoma City, OK, for Defendant/Appellee Koteswar Rao Sureddi.

John R. Paul, Leah McCaslin Kinsey, The Paul Law Firm, Tulsa, OK, for Defendant/Appellee Durant H.M.A., Inc.

TOM COLBERT, Judge:

¶ 1 Plaintiff, Tim Hutson, appeals an order of the trial court granting a new trial to Defendant, Koteswar Rao Sureddi (Dr. Sureddi). The two issues on appeal in this medical malpractice action are whether the trial court abused its discretion in (1) granting a new trial to Dr. Sureddi, and (2) refusing to grant a new trial as to all parties and all issues. We find that the trial court did not abuse its discretion in granting a new trial as to Dr. Sureddi, but did abuse its discretion in refusing to grant a new trial as to all parties and all issues. Therefore, we affirm in part, reverse in part, and remand for further proceedings not inconsistent with this opinion.

## BACKGROUND

¶ 2 Hutson filed suit against Dr. Sureddi and Durant HMA, Inc. (Hospital), alleging negligence in their treatment of Hutson's Father, Raymond Hutson. A jury trial was held in the matter, resulting in a verdict in favor of Hospital and against Dr. Sureddi. The jury set the amount of damages at $900,000. The journal entry of judgment on the jury verdict was filed on May 8, 2000. Dr. Sureddi filed a motion for new trial on May 17, 2000, alleging, among other things, irregularity in the proceedings of the jury. Dr. Sureddi claimed that the failure of one juror to give full and truthful answers during *voir dire* required that the court grant a new trial. Specifically, Dr. Sureddi alleged that, during *voir dire*, the jury foreman (Juror) failed to acknowledge that he knew Dr. Sureddi and that Dr. Sureddi had previously treated Juror as a patient in the emergency room. In his affidavit, which was attached to the motion for new trial, Dr. Sureddi attested:

On the second day of jury deliberations in the small courtroom, I was much closer to the jurors and believed that one of the jurors, Mr. Wakefield, looked familiar.... Following the verdict, I reviewed the record of Mr. Wakefield from the Medical Center of Southeastern Oklahoma, and discovered that I had indeed treated Mr. Wakefield in the emergency room where he had been brought in by a member of the Achille Police Department.... The na-

ture of the contact was such that Mr. Wakefield may well be prejudiced against me.

On that same day, Dr. Sureddi filed an application for an order to disclose medical and mental health records and an order of confidentiality. Attached to the application was a sealed appendix containing the emergency room records of Juror.

¶ 3 The trial court entered an order on May 26, 2000, which ordered the medical records relating to Dr. Sureddi's motion to be disclosed to the attorneys of record. The court further ordered that the records remain confidential and "not be disclosed except that the attorneys may inform their clients of the general nature of the contents as they pertain to the Motion for New Trial...."

¶ 4 In his response, Hutson opposed the motion for new trial, asserting that no juror misconduct occurred, but if such misconduct did occur, a new trial was not in order because Dr. Sureddi delayed reporting his familiarity with Juror. Hutson also filed a motion to strike the appendix of medical records filed by Dr. Sureddi. In this motion, Hutson asserted that Juror's medical records were obtained contrary to Oklahoma law.

¶ 5 A hearing was held on the motion for new trial on July 6, 2000. The following exchange regarding the potential jurors' relationship with Dr. Sureddi, which took place during *voir dire*, was read into the record:

THE COURT: Any of you know Dr. Sureddi? Raise your hands high, if you would.

JUROR SMITH: By name.

THE COURT: Well—

JUROR SMITH: By name.

THE COURT: Okay, just raise your hand so we can get your—get your names. Ms. Wakefield, you know him. Mr. Jackson. Ms. Crawford. And Ms. Smith. And Cornelison.

JUROR CORNELISON: I just know him, I don't—

THE COURT: Okay. Anyone else? Okay, Mr. Wakefield?

JUROR WAKEFIELD: I'm Wakefield, you got her name wrong.

THE COURT: I'm sorry, I did. Mixed Ms. Langham and Mr. Wakefield up. Okay. Everybody get all those names?

The trial judge concluded, "I find from my examination of all the affidavits, and I remember and so forth that Mr. Wakefield did—he did not raise his hand. Except perhaps maybe to call attention to my error in misnaming—calling his neighbor by his name." The trial court sustained Dr. Sureddi's motion for new trial, reasoning that:

I am convinced that since the plaintiff reported he knew he raised his hand and did not question him about Dr. Sureddi, I think the plaintiff certainly would have had he known that he had—had treated him, for whatever he treated him of.... I'm also going to speak for the record, this juror played such a critical role in this nine to three decision by being the foreman, that I—that's one of the key reasons I think this case must be retried in all fairness to the defendant.

At the hearing, Hutson asserted that any order granting a new trial should be applicable to all parties and all issues.

¶ 6 Dr. Sureddi filed a motion to settle the order sustaining the motion for new trial and submitted a proposed order memorializing the trial court's decision to grant him a new trial. Hutson opposed the proposed order because it limited the new trial to Dr. Sureddi. Hospital responded to Dr. Sureddi's motion to settle and argued that the trial court should grant a new trial as to Dr. Sureddi only because Hospital did not seek a new trial as to the judgment in its favor. It asserted that there were two verdicts rendered by the jury, and the motion for new trial filed by Dr. Sureddi only applied to the verdict rendered against him.

¶ 7 The trial court announced its order on August 16, 2000, sustaining Dr. Sureddi's motion to settle the order sustaining his motion for new trial. However, the trial court did not grant a new trial as to Hospital, stating that it had "the authority to grant a new trial to only one of multiple joint and several tortfeasors." In its written order, filed September 11, 2000, the trial court cited *Dominion Bank of Middle Tenn. v. Masterson*, 1996 OK 99, 928 P.2d 291, and *Stillwell*

*v. Johnson,* 1954 OK 189, 272 P.2d 365, in support of its decision.

¶ 8 From this grant of a new trial in favor of Dr. Sureddi, Hutson appeals.

## STANDARD OF REVIEW

¶ 9 A trial court is vested with broad legal discretion in granting or denying a new trial, and its judgment will not be disturbed on appeal unless it clearly appears the court erred in some pure simple question of law or acted arbitrarily. *Poteete v. MFA Mut. Ins. Co.,* 1974 OK 110, ¶ 24, 527 P.2d 18, 22. A much stronger showing of abuse of discretion is required to reverse an order of a trial court granting a new trial than to reverse an order denying a new trial. *Dominion Bank of Middle Tenn. v. Masterson,* 1996 OK 99, ¶ 16, 928 P.2d 291, 294; *English v. Wal–Mart Stores, Inc.,* 2001 OK CIV APP 5, ¶ 17, 16 P.3d 1136, 1142.

## ANALYSIS

I. The trial court did not abuse its discretion in granting Dr. Sureddi a new trial.

¶ 10 Hutson's first contention is that the trial court abused its discretion in granting a new trial. Oklahoma law provides that:

A new trial is a reexamination in the same court, of an issue of fact or of law or both, after a verdict by a jury, the approval of the report of a referee, or a decision by the court. The former verdict, report, or decision shall be vacated, and a new trial granted, on the application of the party aggrieved, for any of the following causes, affecting materially the substantial rights of the party:

1. Irregularity in the proceedings of the court, jury, referee, or prevailing party, or any order of the court or referee, or abuse of discretion, by which the party was prevented from having a fair trial.

12 O.S. Supp.2000 § 651.

¶ 11 The Oklahoma Supreme Court addressed the issue of a juror giving untruthful answers to a question during *voir dire* in *Dominion.* There, the jurors were asked if they knew any of the parties or their attorneys. The juror in question, who was eventually elected foreman, indicated that he did not know the parties and that the only lawsuit in which he had been involved was an easement dispute. *Dominion,* 1996 OK 99, ¶ 3, 928 P.2d at 293. After a verdict was rendered in favor of the plaintiff, the defendant's attorney learned that the juror had been a party to twenty-one lawsuits, including one involving defendant's attorney. *Id.* at ¶ 4, 928 P.2d at 293. The court stated, "We need not determine whether the juror was biased against [the defendant] nor whether he had some influence upon the other jurors. It is enough that [the defendant] was deprived of an opportunity to delve deeper into [the juror's] qualifications during *voir dire* and under Oklahoma case law, is entitled to a new trial." *Id.* at ¶ 7, 928 P.2d at 293. The court cited *Stillwell v. Johnson,* 1954 OK 189, 272 P.2d 365, in support of its decision to remand the case for a new trial.

¶ 12 The *Stillwell* court upheld the grant of a new trial because a juror gave a false answer to a question during *voir dire.* In its syllabus, the court stated:

2. Where prospective juror on voir dire examination answers incorrectly questions materially affecting his qualifications as a juror in pending case, and incorrectness of his answers is not discovered until after jury, of which he was a member, has returned its verdict, it is not error for the trial court to grant losing party a new trial, even though it is not shown that the juror was biased or prejudiced against the losing party or in favor of the prevailing party.

*Id.* at ¶ 0, 272 P.2d at 365 (syl. no. 2 by the court).

¶ 13 It is clear under Oklahoma law that juror misconduct during *voir dire* can be a basis for the grant of a new trial, even after a verdict has been rendered. However, Hutson maintains that the trial court's grant of a new trial should be reversed here because Dr. Sureddi (1) illegally obtained information about Juror and invaded his privacy, (2) waived his claim of juror misconduct by failing to inquire about Juror's relationship with Dr. Sureddi during *voir dire,* and (3) waived any claim of misconduct by failing to raise the issue before the verdict was rendered.

¶ 14 First, we must address Hutson's claim that the evidence was illegally obtained. Although Hutson attacks the contents of the records obtained by Dr. Sureddi, the issue

before this court is whether the trial court abused its discretion in granting a new trial. The critical information is not the medical records, but that Juror knew Dr. Sureddi and failed to inform the court that he knew the doctor when asked during *voir dire.* Had Dr. Sureddi filed the motion for new trial with the affidavit reciting the facts of his previous encounter with Juror but had not filed any medical records with the court, the court still could have found that a new trial should be granted on the basis of such motion and affidavit. Therefore, the illegality of the records is not at issue. The only question properly presented for our review is whether the trial court abused its discretion in granting a new trial because Juror failed to inform the court that he knew Dr. Sureddi.

¶ 15 With that said, this court would caution that it in no way condones future fishing expeditions into potential jurors' personal lives to find information to challenge the veracity of their statements during *voir dire.* Hutson urges that this court adopt an "exclusionary rule" similar to the one adopted by the Minnesota Supreme Court in several cases. *See Baker v. Gile,* 257 N.W.2d 376 (Minn.1977); *Zimmerman v. Witte Transp. Co.,* 259 N.W.2d 260 (Minn.1977); and *Schwartz v. Minneapolis Suburban Bus Co.,* 258 Minn. 325, 104 N.W.2d 301 (1960).

¶ 16 In *Schwartz,* the defendant filed a motion for a new trial after an investigator for the defendant took a statement from a juror which contradicted one of the juror's statements made during *voir dire.* The statement was taken after the verdict was rendered. The court held:

[W]e are of the opinion that it is undesirable to permit attorneys or investigators for a defeated litigant to harass jurors by submitting them to interrogation of this kind without more protection for the ascertainment of the facts than appears in this case. We do not wish to encourage or approve the practice of so doing. Cases may and do arise where a juror's untruthful answering of questions propounded upon a voir dire examination will prevent a litigant from having a fair trial. Where such cases arise, and the facts come to light after the rendition of a verdict, some method of obtaining relief obviously should

be available. However, rather than permit or encourage the promiscuous interrogation of jurors by the defeated litigant, we think that the better practice would be to bring the matter to the attention of the trial court. . . .

*Schwartz,* 104 N.W.2d at 303.

¶ 17 At issue in *Zimmerman* was the fact that, after the verdict had been rendered, some jurors voiced concerns to the court and others about their misunderstanding regarding the effect of their verdict. The court instructed that an attorney must bring a matter involving alleged juror misconduct to the attention of the trial court at "the first suspicion of misconduct." *Zimmerman,* 259 N.W.2d at 262. In *Baker,* the court refused to consider alleged jury misconduct where counsel for the plaintiff contacted three jurors by phone, after rendition of the verdict, and moved for a new trial on the basis of information obtained from one of the jurors. *Baker,* 257 N.W.2d at 378.

¶ 18 Although Hutson's argument, as well as the cases cited to support it, rests on sound principle, the reasoning is inapplicable to the case in controversy. This case does not involve the interrogation of jurors after the jury verdict. Here, Dr. Sureddi recalled a prior contact with Juror and reported that contact to the court after making an investigation into records that he had helped generate.

¶ 19 Under these very limited circumstances, we find that the issue regarding the manner in which Dr. Sureddi obtained the medical records as a treating physician is not relevant for the purposes of our discussion of the trial court's alleged abuse of discretion. Any claims regarding the issue of illegality in obtaining the records and invasion of privacy should be dealt with separately from the issues involved in this appeal.

¶ 20 We must also reject Hutson's second claim that Dr. Sureddi waived his right to seek a new trial because he failed to ask potential jurors if they knew of his acquaintance. Although Hutson claims that Juror did raise his hand when questioned about Dr. Sureddi, the record is unclear on this issue. However, at the hearing on the

matter, the trial judge recalled that Juror did not indicate that he knew Dr. Sureddi. We conclude that, because Juror failed to notify the court that he knew Dr. Sureddi when the court so inquired, there was no need for Dr. Sureddi to question Juror during *voir dire*.

¶ 21 Hutson's third contention on the issue of juror misconduct is that Dr. Sureddi should not receive a new trial because he delayed reporting any familiarity with Juror. However, we cannot accept this argument as a basis for overturning the trial court's order because Dr. Sureddi explained that he did not realize that he had previously treated Juror until the second day of jury deliberations. Although the timing of Dr. Sureddi's announcement of a prior encounter with Juror may seem suspicious, we cannot say that the trial court abused its discretion in granting his request for a new trial. Dr. Sureddi offered an explanation for the delay, and the trial court, based upon the evidence before it, accepted that explanation. The trial court's ruling was in accord with precedent on the issue of granting a new trial due to juror misconduct, and that ruling will not be disturbed on appeal.

II. The trial court did abuse its discretion in refusing to order a new trial as to all parties and all issues.

¶ 22 Hutson asserts that the trial court erred in refusing to order a new trial as to Hospital. The trial court held that it had "the authority to grant a new trial to only one of joint and several tortfeasors." Indeed, the Oklahoma Supreme Court has stated, "[t]he modern rule which is followed in a majority of jurisdictions is that a new trial may properly be granted as to one of several joint tort-feasors...." *Holland v. Sears*, 1959 OK 257, ¶ 10, 348 P.2d 538, 540.

¶ 23 However, in granting a new trial to only one defendant, a trial court must consider the furtherance of justice and any potential prejudice to the remaining parties. The *Holland* court stated:

"While the common-law rule that a new trial as to some joint tort-feasors requires a new trial as to all appears still to be adhered to in a few jurisdictions, the decided trend of modern opinion does not permit the artificial and technical reasoning upon which this common-law rule is founded to preclude the granting of new trial as to one of several joint tort-feasors, *where furtherance of justice seems to require such action and the interests of the remaining defendants are not thereby prejudiced.* Where the interests of parties are such that separate trials may be awarded and separate verdicts found, a new trial may be granted as to one and refused as to the other or others. In this breaking away from restrictions of ancient rules the courts have frequently been aided by legislation."

*Id.* at ¶ 10, 348 P.2d at 541 (quoting 39 Am.Jur. *New Trial* § 25, p. 49) (emphasis added).

¶ 24 In some circumstances, the rights of the parties involved may be so intertwined that justice requires a new trial as to all parties and all issues. *See Burdette v. Maust Coal and Coke Corp.*, 159 W.Va. 335, 222 S.E.2d 293, 299 (1976). Indeed, one court has stated that "partial new trials should not be resorted to unless no injustice would result." *See Williams v. Slade*, 431 F.2d 605, 608 (5th Cir.1970).

¶ 25 In reviewing a trial court's decision to exclude a party from a new trial order, Idaho courts determine "whether there is a clear showing that the issues in the case are so distinct and separable that a party may be excluded without prejudice." *Watson v. Navistar Int'l Transp. Corp.*, 121 Idaho 643, 827 P.2d 656, 669 (1992) (citing *Gasoline Prods. Co. v. Champlin Ref. Co.*, 283 U.S. 494, 500, 51 S.Ct. 513, 515, 75 L.Ed. 1188 (1931)) (holding that "[w]here the practice permits a partial new trial, it may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice"). In *Buffett v. Vargas*, 121 N.M. 507, 914 P.2d 1004, 1010 (1996), the New Mexico Supreme Court adopted the *Watson* test for determining if a new trial is necessary for all parties. Likewise, we also find the reasoning of the *Watson* court to be helpful in determining whether the trial court erred in finding that a new trial should not be ordered for all parties.

¶ 26 We find that the trial court abused its discretion in refusing to order a new trial as to Hospital. The alleged negligence of Hospital is not so greatly distinct and separable from the alleged negligence of Dr. Sureddi as to warrant its exclusion from the new trial. The relationship between Hospital and Dr. Sureddi and the duty of care owed to a patient are so intertwined in this case that it is necessary for the jury in the new trial to reconsider the conduct of both the hospital and the surgeon. To allow a trial only as to Dr. Sureddi could result in prejudice to Hutson because of the nature of the alleged malpractice.

¶ 27 Furthermore, a finding that Juror's misconduct was egregious enough to warrant a new trial as to Dr. Sureddi indicates that justice requires a new trial for all parties. In *Clark v. Foster*, 87 Idaho 134, 391 P.2d 853, 858 (1964), the court held that the trial court erred in failing to grant a new trial as to all issues because "the misconduct of the jury vitiated the entire verdict, not just one cause of action." Likewise, in *Watson*, the court held that the jury's misconduct warranted a new trial as to all parties. *Watson*, 827 P.2d at 683. We find that Juror's misconduct is grounds for a new trial, and the new trial must involve all parties and all issues from the previous trial.

III. This court will not address the issue of change of venue because it was raised for the first time on appeal.

¶ 28 Hutson urges that, if the case is remanded, we should remand to a different county because he is unable to receive a fair and impartial trial in Bryan County. However, the issue of change of venue was not brought before the trial court. "This court will not address on appeal issues that were not first presented to the trial court." *Blackmer v. Cookson Hills Elec. Coop., Inc.*, 2000 OK CIV APP 135, ¶ 18, 18 P.3d 381, 387.

## CONCLUSION

¶ 29 We find that the trial court did not abuse its discretion in granting Dr. Sureddi a new trial. However, we find that the trial court did abuse its discretion in failing to order a new trial as to all parties and all issues. Therefore, we affirm in part, reverse in part, and remand for further proceedings not inconsistent with this opinion.

¶ 30 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

¶ 31 REIF, V.C.J., and GOODMAN, P.J., concur.