# IN THE SUPREME COURT OF IOWA

No. 13–0257

Filed January 23, 2015

MARY E. JACK, Individually and as Parent and Next Friend of
ELLA JACK and OWEN JACK and LAWRENCE LAIRD JACK III,
Individually,

    Appellants,

vs.

JENNIFER R. BOOTH,

    Appellee,

JOHN GERRAD SWEETMAN,

    Appellee.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Douglas F. Staskal, Judge.

A physician seeks further review of a court of appeals decision reversing the district court's judgment and granting a new trial to the plaintiffs after the physician's codefendant rendered medical assistance to a juror during trial. **DECISION OF THE COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND CASE REMANDED.**

Eric M. Updegraff of Stoltze & Updegraff, P.C., Des Moines, for appellants.

Robert C. Rouwenhorst of Rouwenhorst & Rouwenhorst, P.C., West Des Moines (until withdrawal), then Frederick T. Harris and Stacie M. Codr of Finley, Alt, Smith, Scharnberg, Craig, Hilmes & Gaffney, P.C., Des Moines, for appellee Sweetman.

Thomas J. Shomaker and Mark M. Schott of Sodoro, Daly, Shomaker & Selde, PC, LLO, Omaha, Nebraska, for appellee Booth.

**MANSFIELD, Justice.**

A juror fainted in the middle of a medical malpractice trial against two physicians. One of the physicians rose to assist her immediately. The juror quickly recovered and was excused. The district court interviewed the remaining jurors regarding the impact of this incident, denied the plaintiffs' motion for mistrial, and ordered the trial to continue. The jury ultimately returned defense verdicts for both physicians. The district court entered judgment on the verdicts. The court of appeals, however, reversed, ordering a new trial as to both defendants.

The physician who did *not* help the stricken juror now seeks further review of the court of appeals decision. Thus, we have to determine whether the district court abused its discretion when it allowed the jury verdict to stand as to the physician who had not rendered medical assistance. We conclude it did not. The claims against the two physicians were distinct and arose out of separate acts of alleged malpractice at different times. We do not believe plaintiffs' arguments that one physician defendant's actions engendered a sense of undue goodwill and respect in the jury toward the medical profession generally are a sufficient basis for overturning the district court's on-the-scene exercise of discretion. We therefore affirm the judgment of the district court and vacate the decision of the court of appeals on this point. We remand to the district court for further proceedings consistent with this opinion.

### I. Background Facts and Proceedings.

On February 17, 2009, Mary E. Jack was admitted to Mercy Medical Center in Des Moines, complaining of pelvic pain. She was thirty-five weeks pregnant. Upon her arrival, Jack was diagnosed with

high blood pressure and preeclampsia. Dr. Jennifer Booth, an obstetrics and gynecology specialist, was on call and performed an emergency cesarean section after attempting to initiate preterm labor and discovering a prolapsed umbilical cord. As a result of the cesarean section, Jack suffered blood loss, and her blood pressure dropped.

The next day, February 18, Dr. Booth performed a second surgery to treat Jack's low blood pressure and blood loss. During this surgery, Jack underwent a full hysterectomy.

In preparation for the second surgery, Dr. John Sweetman, an anesthesiologist, inserted an IV into Jack's right arm. During that second surgery, Jack's arm became discolored and swollen, apparently because the IV infiltrated.[1]

Later on February 18, Jack underwent a third surgery to relieve internal pressure in her right arm and hand. On February 24, Jack went through a fourth and final surgery to close the incision made earlier to relieve the arm and hand pressure.

On December 30, 2010, Jack, individually and on behalf of her children, sued both Dr. Booth and Dr. Sweetman.[2] The petition alleged in the first count that Dr. Booth was negligent in performing the cesarean section and monitoring Jack's postoperation bleeding and complications. In the second count, Jack alleged Dr. Sweetman had acted negligently with respect to the infiltrated IV in Jack's right arm.[3]

---

[1]An infiltrated IV occurs when the fluid from an IV that is supposed to be entering the vein enters tissue outside the vein instead. Dr. Sweetman did not deny that the IV in Jack's right arm infiltrated but contended it was not the result of his negligent or improper monitoring.

[2]The Jacks also sued Catholic Health Initiatives—Iowa, Corp. d/b/a Mercy Medical Center—Des Moines but later dismissed their claims against Mercy and proceeded only against Dr. Booth and Dr. Sweetman.

[3]As the district court later put it, "Ms. Jack claimed both physicians were negligent but in independent, unrelated, ways that resulted in two separate injuries."

In both counts, Jack sought damages for past and future medical expenses, pain and suffering, loss of body function, loss of wages, future impairment of earning capacity, and loss of consortium with her husband and two children. A separate claim for loss of consortium was included against each defendant on behalf of Jack's husband, Lawrence.

Dr. Booth and Dr. Sweetman answered the petition separately. Each was represented by separate counsel, and each denied having acted negligently in rendering his or her respective medical services to Jack. The case proceeded to a jury trial commencing on November 5, 2012.

On November 7, a juror was taken ill during Dr. Booth's testimony. The district court described the situation as follows:

> THE COURT: I just want to make the record clear as to exactly what happened because I'm not sure in this discussion that there was an actual description of what occurred. What occurred was one of the jurors fainted while she was sitting in her chair in the jury box, and it wasn't noticed immediately by the court when it was. The juror next to her was trying to, you know, revive her, wake her up, so to speak.
>
> At that point everyone in the courtroom noticed what was going on. Dr. Sweetman got up from where he's sitting in the gallery and went over into the jury box and began treating, so to speak, the juror. And he was talking to her, and . . . was assessing her condition, and she clearly had fainted and was ill. And she eventually laid down on one of the pews in the courtroom, and within the next 15 or 20 minutes she was okay, and we took our lunch break. When this happened the rest of the jurors were obviously all present sitting in the -- or standing and sitting in the jury box, obviously observing what was going on. But within two or three minutes of this beginning, the court directed the rest of the jurors to go to their lounge and they did. So they did not observe the entire -- or were not in the courtroom during the entire episode.

After this incident, the plaintiffs orally moved for a mistrial. As plaintiffs' counsel explained,

> Personally I'm not trying to criticize Dr. Sweetman. He did exactly what I would hope he would do in that circumstance. Obviously, the juror's health and well-being [are] much more important than this jury trial, and we're glad that he did that. But it does create a problem for our case where we don't think that jurors who have witnessed him in action, for lack of a better term, are going to be able to be unbiased or unprejudiced by that when considering a medical malpractice action against him.

The district court decided to dismiss the juror who had been ill, but denied the motion for mistrial. It did leave open the possibility of reconsidering that ruling after the court polled the remaining jurors. The court then personally inquired of each juror, seeking to ascertain his or her ability to remain fair and neutral.[4] These interviews occurred in the presence of counsel but out of the presence of the other jurors. During the interviews, the court gave counsel the opportunity to ask questions. After receiving responses from all remaining jurors that they could be fair and impartial, the district court allowed its prior ruling to stand.

Before the case was submitted to the jury, the Jacks renewed their motion for a mistrial. The district court again denied the motion, stating, "The Court believes the steps it took by removing the juror that Doctor Sweetman attended to and in individually voir diring the other jurors indicated that proceeding with the trial with the remaining jurors would not prejudice the plaintiffs."

Jury instruction number 12 stated in part, "You must judge the acts or omissions of each of the defendants separately." The jury was also given separate negligence instructions for each defendant:

**INSTRUCTION NO. 14**

> As to their claim of negligence against Dr. Booth, the plaintiffs must prove all of the following propositions:

---

[4]The juror who was excused also was interviewed. She said that she was feeling better and added that she had been suffering from a stomachache and a headache.

1. Dr. Booth was negligent in one or more of the following ways:

(a) by replacing Ms. Jack's uterus after performing a Cesarean section without achieving hemostasis; and/or

(b) by failing to meet the standard of care in her monitoring and management of Ms. Jack after completing the Cesarean section delivery.

2. Dr. Booth's negligence was a cause of damages to the plaintiffs.

3. The nature and amount of the plaintiffs' damages.

If the plaintiffs have failed to prove any of these propositions, they are not entitled to recover any damages against Dr. Booth. If the plaintiffs have proved all of these propositions, you will determine what amount of damages the plaintiffs are entitled to recover, as explained in Instruction No. 16.

**INSTRUCTION NO. 15**

As to their claim against Dr. Sweetman, the plaintiffs must prove all of the following propositions:

1. Dr. Sweetman was negligent in failing to properly monitor Ms. Jack during the laparotomy and hysterectomy surgery performed by Dr. Booth.

2. Dr. Sweetman's negligence was a cause of the plaintiff's damages.

3. The nature and amount of the plaintiffs' damages.

If the plaintiffs have failed to prove any of these propositions, they are not entitled to recover against Dr. Sweetman. If the plaintiffs have proved all of these propositions, the plaintiffs are entitled to recover some amount of damages against Dr. Sweetman as explained in Instruction No. 16.

**INSTRUCTION NO. 16**

. . . .

The phrase "damages related to the Cesarean section" means damages related to the procedures performed on Ms. Jack, and the care and treatment provided to her, by Dr. Booth.

The phrase "damages related to Ms. Jack's hand and arm" means damages related to the procedures performed on Ms. Jack, and the care and treatment provided to her, by Dr. Sweetman.

The verdict form likewise separated the claims against the two doctor defendants:

**Question No. 1**: Was Dr. Booth negligent by replacing Ms. Jack's uterus after performing a Cesarean section, without achieving hemostasis?  (Answer "yes" or "no").

. . . .

**Question No. 2**:  Was Dr. Booth negligent by failing to meet the standard of care in her monitoring and management of Ms. Jack after completing the Cesarean section delivery?  (Answer "yes" or "no").

. . . .

[If your answer is "no" to <u>both</u> Questions No. 1 and 2, do not answer Questions No. 3, 4 or 5 and go to Question No. 6. Otherwise, go to Question No. 3]

**Question No. 3**: Was Dr. Booth's negligence a cause of any item of damage to the plaintiffs?  (Answer "yes" or "no").

. . . .

**Question No. 4**:

As to each item below . . . , what amount of damages related to the Cesarean section (this phrase is defined in Instruction No. 16), if any, did the plaintiffs sustain that were caused by the negligence of Dr. Booth? . . .

. . . .

**Question No. 5**:

**NOTE: DO NOT ANSWER THIS QUESTION <u>IF</u> YOU HAVE ANSWERED "NO" TO QUESTION NO. 1.**

As to each item below . . . , what amount of damages related to the Ms. Jack's hand and arm (this phrase is defined in Instruction No. 16), if any, did the plaintiffs sustain? . . .

. . . .

**Question No. 6**: Was Dr. Sweetman negligent?   (Answer "yes" or "no").

. . . .

[If your answer is "no", do not answer any more questions and sign the verdict form signature page in the appropriate place. If your answer is "yes", go to Question No. 7]

**Question No. 7**: Was Dr. Sweetman's negligence a cause of any item of damage to the plaintiffs? (Answer "yes" or "no").

. . . .

**Question No. 8**:

As to each item below . . . , what amount of damages related to Ms. Jack's hand and arm (this phrase is defined in Instruction No. 16), if any, did the plaintiffs sustain that were caused by the negligence of Dr. Sweetman? . . .

**NOTE: IF YOU HAVE ANSWERED QUESTION NO. 5, YOUR ANSWER TO THIS QUESTION MUST BE THE SAME AS YOUR ANSWER TO QUESTION NO. 5.**

In short, the jury was not asked to apportion fault between the two doctors. The claims against them were connected only to the extent that the court directed the jury to include Jack's hand and arm injuries in the damages recoverable from Dr. Booth *if* the jury concluded the hysterectomy surgery resulted from her negligence. This made sense, because in that event, the surgery and the resulting infiltrated IV would never have occurred.

The jury answered "no" to questions 1, 2, and 6, finding no negligence on the part of either Dr. Booth or Dr. Sweetman. Based on the verdicts, the court entered judgment for both defendants on November 15.

On November 29, the plaintiffs filed a motion for a new trial raising again the incident of the juror who had become ill. The plaintiffs asserted that "the warm feelings and regard that the jury gained toward Dr. Sweetman during this incident created an unfair and prejudicial

attitude toward the Plaintiffs' case." They sought a new trial as to both defendants.

Following briefing and a hearing, the district court denied the motion on January 28, 2013. With respect to Dr. Booth, the court found,

> [T]he court first concludes that the plaintiffs' motion as to the defendant, Dr. Booth, should be denied without a great deal of discussion. Dr. Booth did not attend to the ill juror, other than to, perhaps, along with others who were in the room, offer her a glass of water. There was simply nothing in Dr. Booth's behavior during the incident that could have engendered any particular good will in her favor or provided a basis for judging her professional competence.[5]

After a more extensive analysis, the district court also denied the motion for new trial as to the claims against Dr. Sweetman. The court acknowledged that appellate courts in other jurisdictions had ordered a mistrial when a defendant physician rendered medical aid to an ill juror, but declined to find these authorities required a new trial against Dr. Sweetman in this instance:

> [I]f, as the court understands the current state of the law, this is a matter that rests in the exercise of the trial court's discretion, then, in this court's judgment, this incident was simply not so dramatic as to compel the conclusion that it would deflect jurors – consciously or otherwise – from deciding the case on the basis of their evaluation of the evidence.

The plaintiffs appealed the denial of their motion for a new trial as to both defendants. We transferred the case to the court of appeals. The

---

[5]At the hearing on the motion for new trial, Dr. Booth submitted three affidavits from persons who were present in the courtroom, including her own affidavit. All attested that she had offered no aid to the stricken juror, but simply stepped down from the witness stand and stood watching with others while Dr. Sweetman rendered assistance. The Jacks' attorney recalled that Dr. Booth offered a glass of water to the juror, but was not certain whether that offer occurred after the other jurors had been excused from the courtroom. For purposes of this appeal, the Jacks do not claim that Dr. Booth provided any assistance to the juror.

court of appeals reversed and remanded the case for a new trial as to both Dr. Sweetman and Dr. Booth. Concerning Dr. Booth, the court of appeals acknowledged she did not provide medical help to the ill juror, but nevertheless concluded a new trial was warranted as to her:

> We conclude that medical assistance furnished by a doctor, who is a party in a medical malpractice case, to a juror in the presence of the jury seriously compromises the integrity of the trial. Such compromise to the integrity of the trial cannot be cured by retrial against some, but not all, defendants. We therefore reject Dr. Booth's request that a new trial should not be ordered against her.

Dr. Booth alone applied for further review, and we granted her application. Dr. Sweetman did not seek further review of the court of appeals decision.

## II. Standard of Review.

> The scope of our review of a district court's ruling on a motion for new trial depends on the grounds raised in the motion. To the extent the motion is based on a discretionary ground, we review it for an abuse of discretion.

*Pavone v. Kirke*, 801 N.W.2d 477, 496 (Iowa 2011) (citation and internal quotation marks omitted). Here, the Jacks sought a new trial based on Iowa Rule of Civil Procedure 1.1004, which states in relevant part:

> On motion, the aggrieved party may have an adverse verdict, decision, or report or some portion thereof vacated and a new trial granted if any of the following causes materially affected movant's substantial rights:
>
> **1.1004(1)** Irregularity in the proceedings of the court, jury, master, or prevailing party; or any order of the court . . . or abuse of discretion which prevented the movant from having a fair trial.
>
> . . . .
>
> **1.1004(8)** Errors of law occurring in the proceedings, or mistakes of fact by the court.

Because the statutory grounds asserted by the Jacks are permissive rather than mandatory, we review the trial court's ruling for abuse of discretion. *See Pavone,* 801 N.W.2d at 496. "In ruling upon motions for new trial, the district court has a broad but not unlimited discretion in determining whether the verdict effectuates substantial justice between the parties." Iowa R. App. P. 6.904(3)(*c*). "Generally, we are reluctant to interfere with a jury verdict and give considerable deference to a trial court's decision not to grant a new trial." *Condon Auto Sales & Serv., Inc. v. Crick,* 604 N.W.2d 587, 594 (Iowa 1999).

### III.  Analysis.

We can grant relief only to parties who timely seek further review after the court of appeals renders a decision. *See In re H.S.,* 805 N.W.2d 737, 744 (Iowa 2011) ("Because Steven did not file a timely application for further review, the court of appeals decision became final as to him." (Internal quotation marks omitted.)); *Peppmeier v. Murphy,* 708 N.W.2d 57, 62 (Iowa 2005) (holding the party who failed to file an application for further review waived her right to contest the court of appeals decision). Thus, whether the district court abused its discretion in denying a new trial as to the Jacks' claims against Dr. Sweetman is not before us.  The court of appeals decision reversing the district court and directing a new trial on those claims has become final.

This leaves the claims against Dr. Booth.  It is possible for a new trial to be granted as to less than all the defendants involved in a case. *See Olinger v. Tiefenthaler,* 226 Iowa 847, 850, 285 N.W. 137, 138 (1939) ("It is true, as contended by appellant, that the court may, on a motion for new trial, sustain the motion as to some defendants and deny it as to others of the defendants . . . ."); *Weyer v. Vollbrecht,* 208 Iowa 914, 919–20, 224 N.W. 568, 570 (1929) (upholding grant of a new trial in an

alienation of affections case as to some but not all defendants where the liability could be either joint or several and the evidence did not support a verdict against two of the defendants); *Pearse v. Balm*, 152 Iowa 422, 424, 132 N.W. 821, 821 (1911) (stating the trial court was authorized to grant a new trial as to only those defendants against whom the evidence was insufficient). Rule 1.1004 also seems to support this outcome. As noted above, it provides that "[o]n motion, *the aggrieved party* may have an adverse verdict, decision, or report or *some portion thereof* vacated and a new trial granted." Iowa R. Civ. P. 1.1004 (emphasis added).

In *Houvenagle v. Wright*, a pedestrian who was injured when struck by a moving car sued both the car's driver (alleging negligence) and the dealership that had sold the car (alleging a defective carburetor). 340 N.W.2d 783, 784–85 (Iowa Ct. App. 1983). The jury did not make an award against either defendant, and the district court ordered a new trial against the driver only, reasoning there was no evidence the carburetor had been defective. *Id.* at 785. The court of appeals upheld the grant of a new trial as to one defendant only. *Id.* at 785–86. The court explained, "In general, a new trial may be granted in favor of any of the parties where that can be done without affecting the rights of the other parties." *Id.* at 786.

The foregoing Iowa authority appears to be consistent with the general rule. *See* 58 Am. Jur. 2d New Trial § 29, at 102 (2012) ("The granting of a new trial as to one defendant does not require that the plaintiff be granted a new trial with regard to claims against another defendant.").

Although this principle was recognized long ago in Iowa, we have not had occasion to apply it in recent years. Courts in other jurisdictions have more recently set forth standards for evaluating when it is

appropriate for a court to grant a new trial against fewer than all defendants. *See, e.g., Williams v. Slade*, 431 F.2d 605, 608 (5th Cir. 1970) ("[P]artial new trials [as to one defendant and not as to another] should not be resorted to unless no injustice would result."); *Buffett v. Vargas*, 914 P.2d 1004, 1010 (N.M. 1996) (stating the standard governing partial new trials should be " 'whether there is a clear showing that the issues in the case are so distinct and separable that a party may be excluded without prejudice' " (quoting *Watson v. Navistar Int'l Transp. Corp.*, 827 P.2d 656, 682 (Idaho 1992))); *Hutson v. Sureddi*, 41 P.3d 993, 998 (Okla. Civ. App. 2001) ("[I]n granting a new trial to only one defendant, a trial court must consider the furtherance of justice and any potential prejudice to the remaining parties.").

In *Sheridan v. St. Luke's Regional Medical Center*, the plaintiffs sued a hospital and pediatrician for the negligent medical treatment their newborn son received during his first few days of life. 25 P.3d 88, 92, 97 (Idaho 2001). The trial court determined the jury verdict in the pediatrician's favor was against the weight of the evidence and consequently granted the plaintiffs a new trial as to both the doctor and the hospital. *Id.* at 94–95. The hospital argued that the trial court erred in determining a new trial was warranted against both defendants. *Id.* at 97. The Idaho Supreme Court explained the standard a court should use to determine whether a grant of a new trial should apply to all or only some defendants:

> The test for determining whether a party can be excluded from an order for a new trial is whether there is a clear showing that the issues in the case are so distinct and separable that a party may be excluded without prejudice.

*Id.*

In *Hutson*, the Oklahoma court ordered a new trial on the claims against the defendant doctor after learning he had previously treated one of the jurors. 41 P.3d at 994–95. Yet the appellate court also directed a new trial on the claims against the defendant hospital, reasoning, "The relationship between Hospital and Dr. Sureddi and the duty of care owed to a patient are so intertwined in this case that it is necessary for the jury in the new trial to reconsider the conduct of both the hospital and the surgeon." *Id.* at 999.

In the present case, a new trial could be ordered against Dr. Sweetman alone. Dr. Sweetman's alleged negligence pertained to the monitoring of an IV in Jack's arm during the second surgery; Dr. Booth's alleged negligence related to treatment decisions before the second surgery. As the instructions and the verdict forms make clear, the jury assessed each defendant's negligence independently. Dr. Sweetman could not and did not assert that Dr. Booth had any involvement with the IV monitoring. Nor did he ask the jury to allocate a percentage of fault for Jack's arm and hand injuries to Dr. Booth. *See* Iowa Code § 668.3(2) (2013). Thus, it would be *possible* to order a new trial as to Dr. Sweetman and not as to Dr. Booth without resulting in unfair prejudice to either the Jacks or Dr. Sweetman.

There are relatively few reported cases even presenting the question whether a new trial should be ordered when a physician defendant treats a juror during trial. Those decisions do not specifically address the need for conducting a new trial as to other defendants. *See, e.g.*, *Campbell v. Fox*, 498 N.E.2d 1145, 1147 (Ill. 1986) (ordering a new trial against a surgeon who aided a juror during trial where that physician was the only named defendant); *Haukedahl v. St. Luke's Hosp.*, No. L-92-011, 1993 WL 496681, at *1, *3 (Ohio Ct. App. Dec. 3, 1993)

(granting a new trial against the two defendant doctors who assisted an ill juror, but not discussing whether there were additional codefendants and whether a new trial would be required as to them).

For instance, in *Heidt v. Argani*, the court directed a new trial as to both the doctor who helped the stricken juror and the medical clinic that was a codefendant but did not discuss the possibility of only a partial new trial. 214 P.3d 1255, 1259 (Mont. 2009). In any event, the doctor was an employee of the clinic. *Id.* at 1256. Similarly, in *Reome v. Cortland Memorial Hospital*, where two doctor defendants came to the aid of the ill juror, the court required a new trial against both of them. 543 N.Y.S.2d 552, 553–54 (App. Div. 1989).

Our case is distinguishable from the foregoing malpractice cases in which the courts ordered new trials against all defendants. Those cases involved a single injury and claims for that injury against both the doctor who treated the plaintiff and the facility where the treatment took place. *See Sheridan*, 25 P.3d at 97; *Heidt*, 214 P.3d at 1256–57; *Hutson*, 41 P.3d at 999. Here, however, the alleged negligence of Dr. Sweetman and that of Dr. Booth arose in different circumstances. There was no legal relationship, such as an employment or credentialing relationship, between them. The jury was asked to and did determine each defendant's negligence separately without any weighing of comparative fault.

Thus, the issues are not "so intertwined as to necessitate a new trial for both" defendants. *Sheridan*, 25 P.3d at 97. If Dr. Sweetman must go through a new trial without Dr. Booth, the second surgery would simply be accepted as medically necessary, and a new jury would

then determine whether Dr. Sweetman was negligent in monitoring the IV during that surgery and, if so, what the resulting damages were.[6]

Having determined that a new trial as to only one defendant is feasible here, we now need to decide whether that is the correct outcome. This situation is unlike the cases in which both doctor defendants provided medical assistance to the stricken juror. *Reome*, 543 N.Y.S.2d at 553; *Haukedahl*, 1993 WL 496681, at *1. Yet the Jacks argue that a new trial also should have been ordered as to Dr. Booth because "Dr. Sweetman's humanitarian efforts benefit anyone in his profession."[7]

This single assertion is not enough for us to conclude that the district court abused its considerable discretion in denying the plaintiffs a new trial against Dr. Booth. Dr. Sweetman was the only person who actually helped the ailing juror. The district court, which witnessed the entire scene, found "nothing in Dr. Booth's behavior during the incident that could have engendered any particular good will in her favor."

Normally, we judge people as individuals, not as members of a group, or at least we try to follow that approach. It is just as possible that Dr. Booth's failure to render care would be held against her as that Dr. Sweetman's acts would transfer sympathy to Dr. Booth.[8] And what about the physician who testified as an expert witness against Dr. Booth? By plaintiffs' logic, the jury's warm feelings would have extended to him as well. For all these reasons, we cannot find the district court

---

[6]In other words, consistent with the verdict forms and the actual verdict in the first trial, Dr. Sweetman could not attempt to apportion fault to Dr. Booth.

[7]As noted above, the court of appeals reasoned that the assistance rendered by Dr. Sweetman "compromise[d] the integrity of the trial" and "[s]uch compromise to the integrity of the trial cannot be cured by retrial against some, but not all, defendants." Yet these statements beg the question of how, exactly, Dr. Sweetman's assistance would have tainted the fairness of the proceedings as to Dr. Booth.

[8]We do not mean to criticize Dr. Booth's courtroom behavior. It appears the situation was under control once Dr. Sweetman began rendering aid.

abused its discretion in denying the plaintiffs a new trial on their claims against Dr. Booth.

**IV. Conclusion.**

For the foregoing reasons, we affirm that part of the judgment of the district court denying a new trial on the Jacks' claims against Dr. Jennifer Booth. We vacate the court of appeals decision as to Dr. Booth; however, the court of appeals decision will stand as to Dr. John Sweetman. We remand this case to the district court for further proceedings consistent with this opinion.

**DECISION OF THE COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND CASE REMANDED.**