(No. 62338.—

PATRICIA RUTH CAMPBELL, Appellant, v. RICHARD O. FOX, Appellee.

*Opinion filed October 1, 1986.*

Judy L. Cates and Charlene E. Novick, of Carr, Korein, Kunin, Schlichter & Brennan, of East St. Louis, for appellant.

Jerome E. McDonald, of Campbell, Furnall, Moore & Jacobsen, P.C., of Mt. Vernon, for appellee.

JUSTICE MILLER delivered the opinion of the court:

The plaintiff, Patricia Campbell, brought this action for medical malpractice against the defendant, Dr. Richard O. Fox. At the conclusion of a jury trial in the circuit court of Franklin County, judgment was entered on a verdict in the defendant's favor. The appellate court affirmed the judgment, with one justice dissenting (135 Ill. App. 3d 231), and we allowed the plaintiff's petition for leave to appeal (94 Ill. 2d R. 315(a)).

The defendant, a general surgeon, performed an augmentation mammaplasty on the plaintiff in August 1980. Complications developed, and Dr. Fox removed one of the implants in April 1981. Several months later another doctor removed the other implant and performed reconstructive surgery. As developed at trial, the central issue in this case concerned the course of Dr. Fox's post-operative treatment of the plaintiff. Medical experts who testified at trial stated that the appropriate medical practice would have been to recommend removal of the left implant no later than December 1980. In this case, a crucial determination centered on what occurred during the

plaintiff's appointments with the defendant at that time. The plaintiff testified that she had been taking the antibiotics as prescribed by the defendant and that the defendant did not tell her that the left prosthesis would have to be removed. This testimony was contradicted by the defendant and his nurse, Judith Eubanks, who also said that the plaintiff became very upset and refused to allow the defendant to remove the prosthesis. Although the defendant's medical notes said that the plaintiff was not following the antibiotic treatment, they did not say that she refused his advice to have the prosthesis removed.

The plaintiff first argues that a mistrial should have been declared when the defendant came to the aid of a juror who lost consciousness. This occurred at the beginning of the trial, during the plaintiff's opening statement. The trial judge made a request for some "C.P.R. treatment" and then asked that the jury be removed from the courtroom. The trial judge later described what had occurred:

> "During the course of the opening statement, Juror Audrey Hart seemed to lose consciousness on a momentary basis. Her head rolled back and she appeared to be unconscious. The opening statements were interrupted and she was administered to by the defendant in this case, Doctor Fox, who carried her from the jury chair, her place in the jury box, to counsel table, at which point she seemed to regain consciousness and no further aid was administered at that time. The jury was removed from the courtroom and an ambulance was called. The ambulance attendants came in and removed Mrs. Hart, who was in a conscious condition at that time, and she has since been taken to the hospital and her husband is with her at the hospital and she appears to be alert and aware of what is going on."

The trial judge then said that he did not believe that a mistrial was warranted and that he intended to proceed

with the trial.

The plaintiff immediately moved for a mistrial, however, arguing that the events might be prejudicial. The trial court denied the motion but said that he would allow a limited *voir dire* to ascertain what effect, if any, the occurrence had on the jurors. The jury was then returned to the courtroom, and the trial judge told the jurors the following:

> "Ladies and gentlemen, I am happy to relate to you that Mrs. Hart is conscious and she is alert and she has been taken to the Franklin Hospital, as a precautionary measure, as I gather, and she is going to be under the care of Doctor Aufrecht out there. Her husband is with her and her daughter is going to be out there in a few minutes, and she appears to be fully recovered from this unfortunate episode.

> I am going to place Mr. Davis in her stead for the balance of the trial. That's one reason we have alternate jurors. So, Mr. Davis, take her place over here.

> I've had the bailiffs get sick on me during the course of trials and I have had jurors get sick after the case has been submitted to them for deliberation, while the jury was deliberating, but I have never experienced this problem. I am going to ask you two questions about this particular episode and I want you to answer them."

The jurors were then asked two questions proposed by plaintiff's counsel: "Do you still feel you can be fair and impartial?" and "Did the treatment rendered to the juror by Dr. Fox prejudice you in any way?" All the jurors answered that they could still be fair and impartial and that Dr. Fox's treatment would not prejudice them in any way. The trial then resumed, resulting in a verdict for the defendant.

Although there is no indication here that the defendant's actions were intended to influence the jury, the effect of the unusual events in this case, however, was "so apparent as to have unquestioned influence upon the ju-

ry's ability to try the issues in controversy fairly" (*Buckler v. Sinclair Refining Co.* (1966), 68 Ill. App. 2d 283, 295). The credibility of the parties played a crucial role in this case, and it is doubtful whether the jurors could make a dispassionate evaluation of the defendant's testimony after witnessing his attempt to render immediate treatment to one of their fellow jurors. The extraordinary events here—Dr. Fox's prompt response to the emergency, his carrying the stricken juror to the counsel table, where she revived, and the juror's eventual recovery in the hospital—presented the defendant to the jury in a favorable light, and we believe that a likely effect of these events was to predispose the jury in Dr. Fox's favor. See *Marcin v. Kipfer* (1983), 117 Ill. App. 3d 1065.

Moreover, we do not believe that the jurors' responses to the questions propounded by the trial judge regarding the occurrence are dispositive. The jurors could not know at the time the questions were asked that their verdict in this case would depend so heavily on the parties' credibility. (See *Holbrook v. Flynn* (1986), 475 U.S. 560, 570, 89 L. Ed. 2d 525, 535, 106 S. Ct. 1340, 1346-47.) When the jury might have reasonably returned a verdict for either party, it is more difficult to say that a potentially improper influence did not affect the verdict. (See *Mattice v. Klawans* (1924), 312 Ill. 299, 304.) We cannot say from the record before us that the jury verdict was not influenced by the unusual occurrence here, and therefore we believe that a new trial is necessary. *Cf. Sheley v. Guy* (1976), 63 Ill. 2d 544, 546; see also *Mattox v. United States* (1892), 146 U.S. 140, 149, 36 L. Ed. 917, 920-21, 13 S. Ct. 50, 53.

The plaintiff alleges several other trial errors, but in light of our decision here we shall consider only one additional question, which may recur on retrial: whether the trial court erred in disallowing certain impeachment evidence. The proffered evidence was a letter written by

Dr. Lisle Wayne, a plastic surgeon whom the plaintiff had consulted, to the plaintiff's previous counsel in response to a long and complex letter from the attorney. Dr. Wayne replied that "[t]here are many questions and many areas of concern which you expressed in your letter and I am either not at liberty or not qualified to answer many of your questions." Dr. Wayne's testimony was presented to the jury through an evidence deposition. During the deposition the plaintiff was unable to introduce the letters into the record or to cross-examine Dr. Wayne on their content; apparently Dr. Wayne was the only person present at the deposition who had copies of the letters and did not allow the plaintiff to see them or provide her with extra copies. The plaintiff did not ask to continue the deposition to a later date or seek the court's assistance in obtaining the material, as permitted by rule (see 103 Ill. 2d R. 219(a)); see also *Lynch v. Mullenix* (1977), 48 Ill. App. 3d 963), nor at trial did she call Dr. Wayne as a witness to inquire further on the subject, as permitted by rule (see 87 Ill. 2d R. 212(b)). Because Dr. Wayne was not present at trial to explain the letters, the trial judge did not abuse his discretion in refusing to admit them into evidence. By waiting until trial to resolve the question, the plaintiff lost her opportunity to use the letters for impeachment purposes.

For the reasons stated, the judgments of the circuit and appellate courts are reversed, and the cause is remanded to the circuit court for a new trial.

*Reversed and remanded.*