FILED

August 14 2009

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 08-0626

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 267

AMY S. HEIDT, Individually and as the Personal Representative
of the Estate of GERARD A. HEIDT, Deceased,

        Plaintiff and Appellant,

    v.

FARANAK ARGANI, M.D., and DEACONESS
BILLINGS CLINIC,

        Defendants and Appellees.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
                  In and For the County of Yellowstone, Cause No. DV 07-0583
                  Honorable G. Todd Baugh, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Steven J. Harman; Harman, Warren & Harris, Billings, Montana

        For Appellees:

                John J. Russell; Brown Law Firm, Billings, Montana

                      Submitted on Briefs:  July 21, 2009

                                  Decided:  August 14, 2009

Filed:

            _____
                          Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     Amy Heidt, individually and as Personal Representative of the estate of her husband Gerard Heidt, brought a medical malpractice action against Dr. Faranak Argani and her employer Deaconess Billings Clinic.  The jury returned a verdict for Argani and the Clinic, and Heidt appeals.  We affirm in part and reverse in part.

¶2     Heidt presents the following issues for review:

¶3     Issue One:  Whether the District Court should have granted Heidt's motion for a mistrial after a juror became ill during closing arguments and was attended to by Dr. Argani.

¶4     Issue Two:  Whether the District Court should have required Heidt to order the transcript of the entire trial for this appeal.

## PROCEDURAL AND FACTUAL BACKGROUND

¶5     Heidt's case against Argani was tried in the District Court before a jury in October, 2008.  On the fifth day of trial Heidt's attorney presented his closing argument to the jury.  Most of the argument was delivered as a first-person narrative by Heidt's attorney who assumed the persona of Heidt's deceased husband to recount the events leading to his death.  On appeal Heidt's attorney describes his presentation as "[c]hanneling … as though he was the decedent." After an extended closing, Heidt's attorney began to "channel" a description of the death of Heidt's husband, using phrases such as:  "Then, oh my God, I'm dying." He then began describing being autopsied,

2

including a description of being cut open and of his sorrow at not getting to see his children grow up.

¶6     This got to be more than some could bear.  One of the jurors announced that she was "not okay" and that she thought she was going to pass out.  She attempted to leave the jury box and the court called a recess.  The remaining jurors were taken to another room, and the ill juror was assisted into the jury room.  She was attended by the defendant Argani, by Heidt's co-counsel Hammond, who is also a physician, and, with the District Court's permission, by three other jurors who were also nurses.  Emergency medical personnel were summoned and took the ill juror to the hospital.  Dr. Argani was with the ill juror for approximately fifteen to twenty minutes.

¶7     The parties re-convened without the jury and provided an account on the record as to what had happened.  Heidt moved for a mistrial, and the District Court took the motion under advisement.  The District Court admonished the jury not to let the events with the ill juror affect their deliberations on the case.  The District Court also asked the jurors as a group whether they could set aside what had happened and render a verdict based solely on the evidence.  No juror expressed any problem, and the alternate juror was seated.  Closing arguments continued and after deliberation the jury returned a defense verdict.

¶8     The parties briefed the mistrial issue and on December 5, 2008 the District Court entered an order denying Heidt's motion.  The District Court concluded that while there was "an irregularity in the proceedings," the trial as a whole was fair and that the "jury verdict was not influenced by the circumstances surrounding the juror that became ill."  The District Court entered judgment for Argani and the Clinic, and Heidt appeals.

3

¶9 For purposes of appeal, Heidt designated only parts of the trial transcript, consisting of the closing arguments and the record of the events pertaining to the ill juror. Argani moved that the District Court require Heidt to order the transcript of the entire trial, at her expense, for purposes of the appeal. The District Court granted Argani's motion and Heidt appeals from that order.

## STANDARD OF REVIEW

¶10 A district court's decision on a motion for a mistrial must be based upon whether the party has been denied a fair and impartial trial, and the decision on the motion is reviewed to determine whether the court abused its discretion. *Harding v. Deiss*, 2000 MT 169, ¶ 19, 300 Mont. 312, 3 P.3d 1286. A motion for a new trial is governed by § 25-11-102, MCA.

¶11 We review the District Court's determination to grant or deny a motion to order additional transcripts under M. R. App. P. 8(3)(b) for abuse of discretion. *See Ratcliff v. Murphy*, 150 Mont. 31, 39, 430 P.2d 627, 632 (1967). However, this Court retains the plenary power to determine whether the transcripts actually ordered as part of the record on appeal provide a sufficient basis for ruling on the issues raised. M. R. App. P. 8(2).

## DISCUSSION

¶12 *Issue One: Whether the District Court should have granted Heidt's motion for a mistrial after a juror became ill during closing arguments and was attended to by Dr. Argani.* The District Court found that the ill juror event constituted an "irregularity in the proceedings" under § 25-11-102, MCA. That statute provides that a verdict may be vacated and a new trial granted for a number of "causes materially affecting the

4

substantial rights" of the moving party. One of those causes is an "irregularity in the proceedings . . . by which either party was prevented from having a fair trial." Section 25-11-102(1), MCA. There was no other issue regarding the fairness of the trial, and the District Court determined that when the trial was considered as an entire proceeding the episode with the ill juror did not materially affect Heidt's rights. While citing § 25-11-102, MCA, the District Court emphasized that there had been a fair trial, thereby applying the standard for evaluating a motion for mistrial.

¶13 The events at issue in this case are unique to medical malpractice claims and appear to be rare occurrences. There are few reported cases dealing with similar facts—where during a medical malpractice trial the defendant doctor provides care for a sick or injured juror in the presence of the other jurors. In those few cases, the courts have held that the event adversely affected the right of the opposing party to a fair trial and that a mistrial was required.

¶14 In *Campbell v. Fox*, 498 N.E.2d 1145 (Ill. 1986), a juror in a medical malpractice trial lost consciousness during opening statements and was revived by CPR administered by the defendant doctor. After the event the trial judge questioned the jurors as to whether they could still be fair and, being satisfied with the responses, continued the trial. The jury returned a verdict for the doctor. The Illinois Supreme Court found that the events had an "unquestioned influence upon the jury's ability to try the issues in controversy fairly." *Campbell*, 498 N.E.2d at 1147. The defendant doctor's response to the medical emergency "presented the defendant to the jury in a favorable light" the effect of which was to "predispose the jury" in the doctor's favor. *Campbell*, 498 N.E.2d

5

at 1147. The effect of the event was so apparent that a new trial was required. *Campbell,* 498 N.E.2d at 1147.

¶15    A similar situation occurred in *Reome v. Cortland Memorial Hospital*, 152 A.D.2d 773, 543 N.Y.S.2d 552 (1989), when a juror collapsed during a medical malpractice trial and was resuscitated by the defendant doctor. The trial continued and the jury returned a modest verdict for the plaintiff. On appeal, the court found that it was likely that the jury had been influenced by seeing the doctor competently administer care and possibly save the life of a fellow juror. The appeals court reversed the trial court and ordered a new trial, reasoning that a likely conclusion to be drawn by jurors was that they had seen the defendant doctor competently administering medical care to safe a juror's life. The court determined that the "probability of injustice was more than substantial, it was virtually inevitable" and a new trial was required as a matter of law. *Reome*, 152 A.D.2d at 774, 543 N.Y.S.2d at 553. This rule is not applied where the defendant doctor provides medical attention to a stricken person who has no relation to the case and when the event occurs outside the presence and knowledge of the jury. *Brandon v. Karp*, 112 A.D.2d 490, 493, 490 N.Y.S.2d 904, 907 (1985).

¶16    The situations in *Campbell*, *Reome* and in this case arose in a unique situation—a medical malpractice trial in which the jury gets to see the defendant doctor reacting to a real-life situation and apparently successfully delivering life-saving care. The effect of this on the jury is immeasurable, whether or not individual jurors admit it or even consciously know it. We agree with the courts in *Campbell* and *Reome* and their assessment of the substantial impact on the jury of observing the actual drama in the

courtroom, when compared to listening to testimony describing past events during the trial itself. The District Court, in the order denying the motion for a mistrial, noted the force of the decisions from other jurisdictions and said:

> Perhaps that should be and will be the law in Montana. In fact if this Court was sitting as the Appellate Court making a decision based on only briefs and a transcript, this Court might rule the same way.

We appreciate the difficult situation presented to the District Court.

¶17 Even though we reverse the District Court in this case, it should be clear that no fault is assigned to any of those who responded to the ill juror in the courtroom. The contemporaneous record shows that the two doctors properly attended the stricken juror; that the District Court properly allowed the nurse jurors to assist; and that the District Court properly removed the other jurors from the events as soon as practicable. The District Court further made a contemporaneous record of what happened and questioned and admonished the jury. All involved reacted admirably, and this was clearly not an event that could have been planned for or guarded against. Whether we apply § 25-11-102, MCA, governing motions for a new trial, or the mistrial standard of entitlement to a fair and impartial trial, the result is the same. Based upon the extraordinary events observed by the jury, we conclude that a mistrial should have been granted or, failing that, a new trial should have been granted after the verdict.

¶18 *Issue Two: Whether the District Court should have required Heidt to order the transcript of the entire trial for this appeal.* Heidt concedes on appeal as she did in District Court that she "received a fair trial up to the time of the closing arguments." Her motion for mistrial and her primary issue on appeal are limited to the events concerning

7

the ill juror that occurred during her attorney's closing argument. Based upon this assessment of the issues, Heidt designated only the transcript of the closing argument, the briefing of the mistrial issue and the District Court's order and judgment for inclusion in the record on appeal.

¶19    As the appellant, Heidt was required to provide to this Court "a record sufficient to enable it to rule upon the issues raised." M. R. App. P. 8(2). Failure to supply a sufficient record may result in dismissal of the appeal or a remand for completion or supplementation of the record. M. R. App. P. 8(2). The appellee may move the district court to require appellant to order additional transcripts at appellant's expense. M. R. App. P. 8(3)(b). Here, on Argani's motion the District Court ordered Heidt to provide the entire trial transcript at her expense.

¶20    Appellate review on a motion for a mistrial is based upon whether the party has been denied a fair and impartial trial. The District Court denied the motion for mistrial based on the conclusion that the trial as a whole was fair:

> This Court's observations and experience leads it to conclude that this trial, while obviously imperfect, was nonetheless a fair trial to both sides and that the jury verdict was not influenced by the circumstances surrounding the juror that became ill.

To prevail in this matter, Argani had to persuade this Court that Heidt received a fair trial. Given that standard of review, this Court can not conclude that the District Court abused its discretion when it ordered Heidt to provide the entire transcript at her expense.

¶21    For the reasons discussed above, we reverse the District Court's decision not to grant a mistrial and remand for further proceedings consistent with this opinion. We

affirm the District Court's decision to order that Heidt provide the entire transcript on appeal at her expense.

/S/ MIKE McGRATH

We concur:
_____
/S/ JAMES C. NELSON
/S/ PATRICIA O. COTTER
/S/ BRIAN MORRIS
/S/ JIM RICE