DA 10-0357

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 129

GREGORY A. SCHINDLER
and GRACE SCHINDLER,

      Plaintiffs and Appellants,

   v.

UNITED SERVICES AUTOMOBILE
ASSOCIATION (USAA) INC.,

      Defendant and Appellee.

APPEAL FROM:    District Court of the Second Judicial District,
                In and For the County of Silver Bow, Cause No. DV 08-537
                Honorable Brad Newman, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                Wade J. Dahood and Bernard J. "Ben" Everett; Knight, Dahood, Everett &
                Sievers, Anaconda, Montana

        For Appellee:

                Gary L. Walton, Walton & Luwe, Butte, Montana

                      Submitted on Briefs:  February 23, 2011

                                  Decided:  June 7, 2011

Filed:

                         _____
                                       Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1    A jury in the Second Judicial District Court, Silver Bow County, returned a verdict for United Services Automobile Association (USAA), concluding USAA did not breach its homeowner's insurance policy with Gregory and Grace Schindler (Schindlers) and that Gregory Schindler (Greg) had committed fraud when applying for the policy. Schindlers appeal from the District Court's orders denying their motion for summary judgment and motions in limine and granting USAA's motion that Schindlers order and pay for additional transcripts on appeal.  We affirm.

## BACKGROUND

¶2    After securing a loan from Provident Financial (Provident), Greg bought a house located at 307 West Granite Street, Butte, Montana ("House"), in November 2006. Provident required Greg to insure the House, and, if he did not, Provident could force-place insurance at his expense.  The initial insurance policy Greg secured was cancelled in October 2007, and Provident subsequently force-placed insurance.  Greg was unable to afford the force-placed policy and sought other insurance.

¶3    On November 13, 2007, Greg, a retired Marine captain, telephoned USAA, a members-only association that provides insurance to current and former members of the United States military and their dependents.  Greg's call was randomly routed to USAA customer service representative Leeann Williams (Williams).  Williams asked Greg a series of questions and, based upon his answers, provided Greg with a quote for a

homeowner's policy. The call was not recorded. Greg subsequently paid the required premium and received a written policy in the mail.

¶4 The House was destroyed by fire on July 29, 2008, after a tenant left a smoldering cigarette on a couch. Greg notified USAA, and general adjuster Rick Aufrecht (Aufrecht) was assigned to adjust Schindlers' loss. During his investigation, Aufrecht determined that the policy limit of $502,000 was not sufficient to cover the cost of rebuilding the House. Aufrecht also discovered that the description of the House's structure in the policy differed significantly from the description given to USAA by Greg and upon which USAA had based its policy valuation. For example, the policy described the House as having a single kitchen and four bathrooms, when, in fact, the House had six kitchens and six bathrooms. Although these discrepancies were apparent to Aufrecht, he proceeded with his investigation and submitted Schindlers' claim for payment approval. While the investigation was pending, USAA advanced $104,000 to Provident to discharge Schindlers' mortgage and paid Greg $15,000 to help with his losses.

¶5 In December 2008, after concluding its claim investigation, including examining Greg under oath, USAA denied coverage on the basis that Greg had committed fraud during his application conversation with Williams. Specifically, USAA determined that Greg had misrepresented that the House was his primary residence and was a single family dwelling with one kitchen and four bathrooms, when, in fact, it was not his primary residence and had been divided into eight apartment units, which were inhabited by approximately ten tenants at the time of the fire. Greg testified under oath that he had

3

told Williams the House had been divided into apartments; it contained six kitchens and six bathrooms; tenants were living at the House; and, that Greg intended to remodel the House to restore it to a single family residence. USAA asserted that had Greg divulged this information in his application conversation with Williams, as he claimed, he would not have met underwriting criteria, and the policy would not have been issued.

¶6 Schindlers filed suit against USAA in December 2008, asserting USAA breached the insurance contract and the implied obligation of good faith and fair dealing. Schindlers subsequently amended their complaint to include equitable estoppel. USAA defended on the basis that Greg committed fraud in the application process and sought reimbursement of the money it had advanced to Schindlers.

¶7 Before trial, Schindlers moved for summary judgment on their equitable estoppel claim, arguing that because USAA violated § 33-1-501, MCA, by not filing its application form with the Montana Insurance Commissioner (Commissioner), USAA should be estopped from defending with the application information. The District Court denied Schindlers' motion. USAA subsequently disclosed a physical copy of the computer entries made during the application conversation, which contained the prompts and/or questions that Williams had asked Greg and his answers ("screen shots"). Schindlers moved in limine to exclude any evidence of the screen shots. The District Court excluded the physical copy of the screen shots from evidence, but permitted Williams to testify about Greg's answers during the application conversation. Schindlers filed another motion in limine to preclude USAA from introducing any evidence of fraud

4

on the basis that USAA could not produce an application in support of its fraud defense. The District Court denied the motion.

¶8 The case was tried before a jury in June 2010. Greg testified that he bought the House with the intention of residing there with his family after he remodeled the apartments. Greg admitted that he told Williams the House was his primary residence, although he had not slept there since approximately June 2007; he had been residing in a rental home since September 2007; and, six weeks after he spoke with Williams, he placed the House on the market, advertising it as having been converted to apartments. Greg testified he told Williams the House contained six kitchens and six bathrooms. Greg's explanation for the discrepancies between the description of the House as contained in the USAA policy/as recollected by Williams and the actual structure of the House was that Williams had somehow changed his answers.

¶9 Williams testified that she remembered Greg because his profile contained a warning note indicating that he was in the business "flipping"[1] homes, and a previous homeowner's insurance application of his had been declined in April 2006. Due to the warning note and Greg's request for a home insurance quote, Williams asked Greg additional questions, including whether he was going to be living in the House. Greg told her he intended to live there for three to five years. Williams relayed this information to underwriting and received permission to proceed with a quote.

---

[1] The business of buying, fixing, and selling homes.

¶10 Williams, based on prompts generated by USAA's electronic application system, continued to ask Greg a series of questions and entered each of his answers into USAA's computerized system. Williams testified that Greg told her the House was a single family dwelling (as opposed to an apartment); that it was his year-round primary residence; and that he did not have boarders. Greg told her the House had one kitchen and four bathrooms. Williams testified that had Greg told her the House had six bathrooms and six kitchens, it "would have put a red flag up to [her]" because six kitchens was not typical for a single family home. More questions would have been asked, and, had Williams discovered the House had been broken up into apartments, the application would have been declined because it was not a single family dwelling.

¶11 Based on Greg's answers, USAA's computerized system calculated the cost of rebuilding the House at approximately $502,000. Greg accepted that liability amount and was quoted an annual premium of $1,836.40. Williams testified that she never changed the information Greg had given her.

¶12 The jury unanimously found that USAA did not breach the insurance contract or the obligation of good faith and fair dealing and that Greg had committed fraud in the application process and awarded USAA the monies it had advanced to Schindlers. Schindlers appealed following the entry of judgment and ordered transcripts from oral arguments on their motion for summary judgment and motion in limine and the District Court's oral ruling on their motion in limine to preclude evidence of fraud. USAA moved the District Court to require Schindlers to order and pay for additional transcripts

6

on appeal, including opening and closing statements, all evidentiary rulings and motions made during trial, jury polling, and testimony of all the witnesses. The District Court granted USAA's motion, and, as a result, Schindlers paid $2,382.75 for the additional transcripts.

¶13 Schindlers raise several issues on appeal, which we have restated as follows:

¶14 Issue One: Did the District Court err in denying Schindlers' motion for summary judgment?

¶15 Issue Two: Did the District Court abuse its discretion in excluding the physical copy of the screen shots, but in allowing Williams to testify about the statements Greg made to her?

¶16 Issue Three: Did the District Court abuse its discretion in denying Schindlers' motion in limine to preclude USAA from introducing evidence of Greg's fraud?

¶17 Issue Four: Did the District Court abuse its discretion in requiring Schindlers to order and pay for additional transcripts?

## STANDARDS OF REVIEW

¶18 We review a district court's grant or denial of summary judgment de novo, applying the same standard as the district court pursuant to Montana Rule of Civil Procedure 56. *Williams v. Union Fid. Life Ins. Co.*, 2005 MT 273, ¶ 18, 329 Mont. 158, 123 P.3d 213. The party moving for summary judgment must establish that no genuine issues of material fact exist and that the party is entitled to judgment as a matter of law.

7

Once this burden is met, the party opposing summary judgment must present material and substantial evidence that raises a genuine issue of material fact. *Id.*

¶19 A district court's ruling on a motion in limine is reviewed for an abuse of discretion. *Jacobsen v. Allstate Ins. Co.*, 2009 MT 248, ¶ 50, 351 Mont. 464, 215 P.3d 649. An abuse of discretion occurs where the district court acted "arbitrarily without conscientious judgment or exceed[ed] the bounds of reason resulting in substantial injustice." *Id.* at ¶ 53.

¶20 We review a district court's order requiring additional transcripts pursuant to M. R. App. P. 8(3)(b) for an abuse of discretion, and we retain plenary power to determine whether the transcripts actually ordered on appeal provide a sufficient basis for ruling on the issues raised. *Heidt v. Argani*, 2009 MT 267, ¶ 11, 352 Mont. 86, 214 P.3d 1255.

**DISCUSSION**

¶21 *Issue One: Did the District Court err in denying Schindlers' motion for summary judgment?*

¶22 Schindlers filed a motion for summary judgment on their equitable estoppel claim, arguing USAA should be estopped from claiming Greg misrepresented material facts during the oral application process because USAA, in violation of § 33-1-501, MCA, used an application form that had not been approved by the Commissioner. The District Court declined to invoke the doctrine of equitable estoppel as a matter of law or fact, concluding (1) that USAA's oral application process did not have to be approved by the

8

Commissioner and, further, (2) that summary judgment was not appropriate because issues of material fact existed.

¶23   We conclude the District Court appropriately denied Schindlers' motion for summary judgment on their equitable estoppel claim on the basis that issues of material fact existed, which precluded summary judgment. Accordingly, we need not address the District Court's determinations regarding Schindlers' § 33-1-501, MCA, arguments.

¶24   Equitable estoppel, although generally not favored, is a doctrine based upon principles of equity and good faith and serves to prevent a party from suffering gross injustice at the hands of another party who created the situation or condition. *Avanta Fed. Credit Union v. Shupak*, 2009 MT 458, ¶ 41, 354 Mont. 372, 223 P.3d 863. A court sitting in equity is empowered to fashion just results. *Kauffman-Harmon v. Kauffman*, 2001 MT 238, ¶ 11, 307 Mont. 45, 36 P.3d 408. This Court has consistently recognized that "one who seeks equity must do equity." *Id*. at ¶ 13. A party may not expect equitable relief unless he or she comes into court with clean hands. *Id.* at ¶ 19.

¶25   Here, issues of material fact existed regarding whether Greg possessed "clean hands" when applying for the policy, as evinced in the documents USAA attached to its brief in opposition to summary judgment: (1) Greg's statement taken under oath and (2) Schindlers' insurance policy. While Greg stated under oath that he described the House as a six kitchen and six bathroom single family dwelling that had been converted to apartments, the insurance policy indicates Greg represented otherwise. Furthermore,

Greg, for whatever reason, failed to notify USAA of the alleged errors in the policy.[2] Because genuine issues of material fact existed regarding whether Greg applied for the policy in good faith, Schindlers were not entitled to estop USAA from defending itself.

¶26    *Issue Two: Did the District Court abuse its discretion in excluding the physical copy of the screen shots, but in allowing Williams to testify about the statements Greg made to her?*

¶27    Schindlers filed a motion in limine to prevent USAA from presenting any evidence of the screen shots because (1) USAA failed to disclose a copy of the screen shots to Greg within thirty days of his request, pursuant to § 33-15-402(3), MCA, and (2) USAA failed to have the screen shots approved by the Commissioner, pursuant to § 33-1-501, MCA.  The District Court excluded the physical copy of the screen shots from evidence on the basis that USAA did not comply with § 33-15-402(3), MCA.  However, the District Court permitted Williams to testify "as to her . . . recollection of [Greg's] statements."

¶28    On appeal, Schindlers assert the District Court erred in not excluding all evidence of the screen shots, written or oral, pursuant to § 33-1-501, MCA.  Because the physical copy of the screen shots was excluded, we only address whether the District Court erred in permitting Williams to testify.

---

[2]  For example, the front page of the insurance policy states, "IMPORTANT MESSAGES[:] Refer to your Declarations Page and endorsements to verify that . . . policy details are correct and meet your insurance needs."  A subsequent page, entitled "Home Features," described the House as having one standard kitchen and four standard bathrooms.

¶29 A district court retains broad discretion in determining whether evidence is relevant and admissible, and we will not overturn its evidentiary determinations absent an abuse of discretion. *Rice v. C.I. Lanning*, 2004 MT 237, ¶ 23, 322 Mont. 487, 97 P.3d 580. All relevant evidence is admissible, subject to other rules of evidence, including hearsay. M. R. Evid. 402, 802; *State v. Brasda*, 2003 MT 374, ¶ 20, 319 Mont. 146, 82 P.3d 922. Out of court statements that are admissions of a party opponent are admissible as an exception to the hearsay rule. M. R. Evid. 801(d)(2); *Heltborg v. Modern Mach.*, 244 Mont. 24, 39, 795 P.2d 954, 963 (1990). Applicable here, Montana Rule of Evidence 801(d)(2) provides, in relevant part, that a statement is not hearsay if "[t]he statement is offered against a party and is (A) the party's own statement, in either an individual or representative capacity, or (B) a statement of which the party has manifested an adoption or belief in its truth . . . ." Greg's statements to Williams meet both subsections (A) and (B) of Rule 801(d)(2), as he made the statements to Williams over the telephone and subsequently received the written policy containing such statements and failed to notify USAA of any errors contained in the policy. The District Court appropriately permitted Williams to testify as to her recollection of Greg's statements.

¶30 *Issue Three: Did the District Court abuse its discretion in denying Schindlers' motion in limine to preclude USAA from introducing evidence of Greg's fraud?*

¶31 Schindlers moved in limine that USAA be prevented from defending itself pursuant to § 33-15-403, MCA, which precludes an insured's recovery if he or she committed fraud in the application process, because (1) the District Court had concluded

11

the screen shots did not constitute an application within § 33-1-501, MCA, and (2) USAA could not produce an application due to the District Court's exclusion of the screen shots. The District Court denied the motion.

¶32 On appeal, Schindlers argue that the District Court erred in interpreting § 33-1-501, MCA, and, therefore, this Court should overturn the District Court's ruling. We decline to do so. Entirely depriving USAA of its § 33-15-403, MCA, fraud defense is not the appropriate remedy because Greg's statements relating to the description and character of the House provided the basis for the type of policy USAA issued. The District Court acted within its discretion in permitting USAA to defend itself via § 33-15-403, MCA, by allowing Williams to testify about Greg's alleged fraudulent statements. The District Court did not abuse its discretion in denying Schindlers' motion in limine.

¶33 *Issue Four: Did the District Court abuse its discretion in requiring Schindlers to order and pay for additional transcripts?*

¶34 Schindlers, as the appellants, had a duty to provide this Court with " 'a record sufficient to enable it to rule upon the issues raised.' " *Heidt*, ¶ 19 (quoting M. R. App. P. 8(2)). Pursuant to Montana Rule of Appellate Procedure 8(3)(b), USAA, as appellee, was permitted to move the District Court for an order requiring Schindlers to order additional transcripts. *Id.*

¶35 Our consideration of the trial transcript was necessary in order to rule upon the issues Schindlers raised. Accordingly, the District Court did not abuse its discretion in ordering additional transcripts.

12

## CONCLUSION

¶36    For the foregoing reasons, we affirm.

/S/ MICHAEL E WHEAT

We Concur:

/S/ JAMES C. NELSON
/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ JIM RICE