NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2397
_____

TRAVIS S. SWEIGART

v.

VOYAGER TRUCKING CORP., KEVIN J. PATTEN, BLUE & GREEN
TRUCKING & HAIR, LLC, and KEVIN J. PATTEN d/b/a BLUE &
GREEN TRUCKING & HAIR, LLC


Kevin J. Patten, Blue & Green Trucking & Hair, LLC;
Kevin J. Patten D/B/A Blue & Green Trucking & Hair, LLC,
Appellants
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No. 5:21-cv-00922)
District Judge:  Honorable Edward G. Smith
_____

Submitted under Third Circuit L.A.R. 34.1(a)
June 28, 2024

Before: JORDAN, SMITH, *Circuit Judges,* and BUMB, *Chief District Judge**

(Filed: July 29, 2024)

---

* Honorable Renée Marie Bumb, Chief District Judge of the United States District Court
for the District of New Jersey, sitting by designation.

_____

OPINION[**]
_____

BUMB, *Chief District Judge.*

Plaintiff Travis Sweigart suffered catastrophic injuries when his motorcycle crashed into a tractor-trailer. A jury awarded him $25 million in damages. The truck driver, Kevin Patten ("Patten"), and his trucking company, Blue & Green Trucking & Hair LLC (together, "Defendants"), challenge five discretionary rulings of the District Court.[1] Because the District Court did not abuse its discretion with respect to any of the discretionary issues presented on appeal, we will affirm the jury's verdict in its entirety.

I.

### A.    The Accident

In the early morning hours of September 9, 2010, Kevin Patten was driving a fully loaded tractor-trailer along Interstate 176 on his way to a landfill in Morgantown, Pennsylvania. He exited at the Morgantown Road ramp. He was on his phone. At the end of the ramp, Patten saw the headlights of Travis Sweigart's motorcycle approaching from about three football fields away. Patten thought that he had enough time to turn left before Sweigart's motorcycle reached him. Sweigart saw the truck moving toward the end of the offramp but did not slow down because he assumed Patten was only inching

_____

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1]      Defendant Voyager Trucking Corporation, which hired Patten and his trucking company, is not a party to this appeal.

the truck forward towards the intersection to get better visibility before making the left turn. By the time Sweigart realized Patten was making a full left turn, it was too late. Hitting the brakes hard, Sweigart lost control of the bike. The bike rotated 180 degrees, skidded backwards, and smashed into the left rear tandem wheels of the truck's trailer. The impact caused the motorcycle subframe and seat to crush Sweigart's pelvis. Sweigart's injuries were horrific. One of the emergency room orthopedic surgeons who helped save Sweigart's life testified at trial that it was "unquestionably the worst pelvic fracture that he had ever seen." [JA509.]

### B. The District Court Denies Defendants' Bifurcation Motion and Excludes Evidence of Plaintiff's Lack of a Motorcycle License and Prior Acts of Reckless Riding

Concerned about the jury's reaction to Sweigart's gruesome injuries, Defendants moved to bifurcate the liability and damages portions of the trial. They argued that issues of liability and damage were completely distinct and that without bifurcation, there was a real chance that testimony regarding Plaintiff's injuries would infect the jury's decision as to liability. Plaintiff also moved *in limine* to preclude evidence (i) that he did not have a motorcycle license, and (ii) of videos that showed him recklessly riding his motorcycle on one wheel and speeding.

The District Court held oral argument on the pre-trial motions and denied the bifurcation motion. While the District Court noted the unusually gruesome nature of Plaintiff's injuries, it reasoned that a jury would be able to follow its instructions and separate issues of liability and damages. The District Court also rejected Defendants' argument that issues of liability and damages were completely distinct. The Court

3

reasoned that testimony about the location and severity of Plaintiff's injuries would also be an important part of Plaintiff's liability case because that evidence was relevant to whether or not Plaintiff was speeding.

The District Court also granted Plaintiff's *in limine* motions. The District Court explained that although Plaintiff's lack of a motorcycle license was probative, it was too prejudicial to admit, especially because there was no actual evidence that Plaintiff did not know how to ride a motorcycle. And, with respect to the reckless riding videos that Plaintiff had taken of himself just months before the accident, the District Court reasoned that introduction of the videos would be impermissible character evidence against Plaintiff. Nor could they be introduced as evidence of habit, the District Court held, because the videos did not establish that Plaintiff rode his motorcycle with any sort of regular recklessness.

### C. The Trial

#### 1. *Voir Dire*

The parties proceeded to trial. At voir dire, Jury Panel Member #27, like Patten, was a commercial trucker and was familiar with the "crazy stuff" motorcyclists do on the road. [JA485.] Panel Member #27 indicated that his son suffered from a chromosomal disease and was, like Plaintiff, in a wheelchair. When asked by defense counsel whether Panel Member #27 could "put [] aside" thinking about his disabled son when "see[ing] Mr. Sweigart every day," Panel Member #27 responded that he could not and that he might be "start[ing] out a little bit ahead of [Defendants]." [JA487, 492.] The District Court engaged in further colloquy and asked the potential juror whether he could put his

4

son's condition and other biases aside to render a fair verdict. Panel Member #27 assured the Court that he would and agreed with Plaintiff's counsel that it would not be fair if the jury returned a verdict for Plaintiff just because he was in a wheelchair. The District Court denied the Defendants' challenge to strike Jury Panel Member #27 for cause stating that there was "no question" after observing the potential juror's demeanor that he could be fair. [JA494.]

### 2. *Defendants' Motion for a Mistrial*

Plaintiff called his first witness, Dr. Michels, one of his treating emergency room orthopedic surgeons. Dr. Michels described Plaintiff's injuries while displaying a medically accurate, but far from lurid, illustration admitted into evidence representing the damage inflicted on Plaintiff's pelvis. The District Court, noticing that Juror #2 appeared to have a strong reaction to the evidence, interrupted Dr. Michels's testimony to ask if Juror #2 was feeling well. Juror #2 responded that he was not and fainted. **[*Id.*]** In the presence of the other jurors, Dr. Michels immediately asked the District Court to call an ambulance and stepped into the jury box to render aid to Juror #2. One of Plaintiff's other treating surgeons, Dr. Moshkovsky, who was also in the courtroom, stepped in as well to assist. **[*Id.*]** The Court called a recess while Juror #2 received treatment. Outside the presence of the jury, Juror #2 was taken out of the courtroom and transported to a local hospital.

Defendants moved for a mistrial out of concern that the aid rendered to Juror #2 by Plaintiff's physician witnesses in the presence of the jury endowed these witnesses with a "halo effect" that would unfairly prevent the jury from assessing their credibility

5

and testimony. [JA515.] Defendants also argued that the other jurors may have been improperly influenced by observing Juror #2's strong reaction to the evidence. The District Court disagreed. The Court reasoned that the witness physicians were admitted as experts to testify as Plaintiff's treating physicians and describe Plaintiff's injuries.

The District Court called the jury back into the courtroom and informed them that Juror #2 had been transported to the hospital. In open court, the District Court asked the jury by a show of hands whether they could no longer fairly evaluate Plaintiff's physician witnesses after witnessing them rendering aid to Juror #2. No juror raised his or her hand. The District Court then confirmed that each juror was "prepared to proceed and render a fair and just verdict." [JA523.] Each juror nodded.[2] The District Court then dismissed Juror #2.[3]

### 3. *The Verdict and Post-Trial Motions*

The jury returned a verdict in Plaintiff's favor. It found Patten 95% responsible for the accident and awarded Plaintiff $25 million in damages. The District Court denied Defendants' motion for a new trial including, relevant here, a challenge to the District Court's jury charge instructing on Pennsylvania's sudden emergency doctrine. This doctrine lowers the standard of care for a party confronted with a sudden and unforeseeable occurrence. Defendants argued that the District Court erred in giving the instruction because Sweigart did not find himself in a sudden emergency situation; rather,

---

[2] Defense counsel did not request that the District Court query each juror individually.

[3] Juror #2 later returned to the courtroom after leaving the hospital and the District Court, outside the presence of the other jurors, formally dismissed him.

6

he created a sudden emergency situation by recklessly failing to reduce his speed upon noticing Patten's truck. The Court denied Defendants' post-trial motion and entered judgment against Defendants. This timely appeal followed.[4]

## II.

### A.  The District Court Did Not Abuse its Discretion in Denying Defendants' Request To Bifurcate

A district court, in its sound discretion, "[f]or convenience, to avoid prejudice, or to expedite and economize … may order a separate trial of one or more separate issues [or] claims...." FED. R. CIV. P. 42(b). We trust district courts with "broad discretion" in deciding whether to bifurcate issues of damages and liability. *Idzojtic v. Pa. R.R. Co.*, 456 F.2d 1228, 1230 (3d Cir. 1972). Thus, we will only overturn a denial of bifurcation for an abuse of discretion. *Barr Lab'ys, Inc. v. Abbott Lab'ys*, 978 F.2d 98, 105 (3d Cir. 1992).

Defendants argue that the District Court abused its discretion in denying bifurcation because the catastrophic nature of Plaintiff's injuries made it impossible for a jury to impartially separate issues of damages and liability. We disagree. Bifurcating a trial into separate liability and damages sections is the exception, not the rule. *See Lis v. Robert Packer Hosp.*, 579 F.2d 819, 824 (3d Cir. 1978) ("[S]eparation of issues for trial is not to be routinely ordered.") (quoting FED. R. CIV. P. 42(b) Advisory Committee Notes). Defendants offer no persuasive reason to apply the exception here other than that this case, like many personal injury cases, involved serious injuries. But to hold that a

---

[4]  The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1332. We have final order jurisdiction over this appeal pursuant to 28 U.S.C § 1291.

trial court abuses its discretion in denying bifurcation just because a case involves serious personal injuries would flip the presumption against bifurcation on its head. Indeed, it would require courts to grant bifurcation any time a case involved serious personal injuries. *Cf. Nester v. Textron, Inc.*, 888 F.3d 151 (5th Cir. 2018) (affirming denial of bifurcation in personal injury suit where owner was run over by vehicle while it was unmanned, rendering her a quadriplegic). The wide discretion inherent in Rule 42(b) does not require such a result. *Lis*, 579 F.2d at 824 ("Thus, a routine order of bifurcation in all negligence cases is a practice at odds with our requirement that discretion be exercised and seems to run counter to the intention of the rule drafters.").

Here, the District Court specifically instructed the jury to keep issues of damages and liability separate. *See Thabault v. Chait*, 541 F.3d 512, 530–31 (3d Cir. 2008) (affirming denial of bifurcation where district court instructed jury to compartmentalize evidence). The Court also instructed the jury that sympathy could play no part in deciding whether Plaintiff met his burden of proof and, crucially, that the mere fact that injuries occurred did not mean that Plaintiff was entitled to recover damages. We must "presume that the jury follow[ed] such instructions" to "compartmentalize the evidence." *United States v. Urban*, 404 F.3d 754, 776 (3d Cir. 2005); *see also Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004) (explaining that because evidence of liability and damages often overlap, "the normal procedure is to try

8

compensatory and [] damage claims together with appropriate instructions to … the jury[.]") (internal quotation marks omitted).[5]

Defendants cite no case where we have found a district court to have abused its discretion in denying a bifurcation motion. And the primary case they do cite, *Estate of Diaz v. City of Anaheim*, 840 F.3d 592 (9th Cir. 2016), is distinguishable.[6] In *Estate of Diaz*, the Ninth Circuit held that a district court abused its discretion to deny bifurcation where graphic and prejudicial evidence of the plaintiff posing with firearms and displaying gang signs had little to no relevance with respect to either liability or damages. *Id*. at 603. Here, by contrast, testimony regarding Plaintiff's injuries was relevant for both liability *and* damages. Defendants' theory of the case was that Plaintiff was liable (and his injuries so terrible) because he was speeding and did not have time to break. Plaintiff denied that he was speeding and introduced testimony from his treating surgeons that his injuries were not consistent with a high-energy impact caused by speeding.

---

[5]  Defendants argue that these instructions were insufficient because they were "general" and did not "expressly direct[] the jury to compartmentalize" damages and liability evidence. [Reply Br. at 7 n.1.] But Defendants never appear to have asked for a more specific curative or limiting instruction, nor do they challenge the lack of such an instruction on appeal.

[6]  Defendants also briefly mention *McKiver v. Murphy-Brown, LLC*, 980 F.3d 937 (4th Cir. 2020), where the Fourth Circuit vacated a district court's denial of bifurcated trials on liability and punitive damages and remanded for the limited purpose of determining the proper amount of punitive damages without considering certain financial evidence of the defendant corporation's parent companies' ability to pay. But in *McKiver*, the district court failed to instruct the jury that the inflammatory financial evidence, which exposed the jury to the parent companies' ability to pay, while properly admitted for purposes of liability, could not be considered in determining whether punitive damages should be imposed. *Id*. The Fourth Circuit also recognized that bifurcation was not required and that an instruction to compartmentalize the evidence would have also been proper. *Id*. at 974–76.

Finally, even assuming the District Court bifurcated the trial, the jury would still have known that this was a horrific accident. The jury would have seen Plaintiff in a wheelchair. And they would have known that he slammed into a truck while riding a motorcycle. We therefore cannot conclude that Defendants have met their burden of demonstrating that the District Court abused its discretion with respect to bifurcation.

## B. The District Court Did Not Abuse Its Discretion In Denying Defendants' Request for a Mistrial

"We review a denial of a motion for a mistrial for an abuse of discretion." *United States v. Savage*, 85 F.4th 102, 124 (3d Cir. 2023). Defendants argue that once Juror #2 fainted from hearing the testimony of Plaintiff's extensive injuries and Plaintiff's physician witnesses came to his aid, "the damage was done." [Reply Br. at 12.] The District Court was therefore required to declare a mistrial, Defendants argue. **[Reply at 12.]**

Here, too, we disagree. The District Court sufficiently questioned the remaining jurors who each affirmed that his or her impartiality was not affected. When a juror has a strong reaction to graphic evidence and there are concerns that the juror's reaction may impact the impartiality of the remaining members of the jury, it is not an abuse of discretion to deny a mistrial motion upon questioning the jury and confirming that they can remain impartial. *See United States v. Black*, 369 F.3d 1171, 1176 (10th Cir. 2004) (no abuse of discretion in denying mistrial where district court questioned jurors who all affirmed that their impartiality was not affected by another juror fainting from a gruesome autopsy photograph). Here, the District Court's determination that each juror

was sincere in affirming that he or she could remain impartial is entitled to due deference. *Skilling v. United States*, 561 U.S. 358, 396–97 (2010).

Defendants cite to state court cases where a court granted a mistrial based on medical assistance rendered to a juror by a physician-witness. These cases are distinguishable. Each arose in the context of a medical malpractice trial and involved the *defendant*-physician rendering aid to a juror. *Heidt v. Argani*, 214 P.3d 1255 (Mont. 2009) (defendant-doctor assisting juror who became ill during graphic closing argument); *see also Campbell v. Fox*, 498 N.E.2d 1145 (Ill. 1986) (same); *Reome v. Cortland Mem'l Hosp.*, 152 A.D.2d 773 (N.Y. App. Div. 1989) (same). As the Montana Supreme Court explained, the effect of seeing a "defendant doctor reacting to a real-life situation and apparently successfully delivering life-saving care" is "immeasurable." *Heidt*, 214 P.3d at 1259. Here, by contrast, Plaintiff's treating physicians were not defendants in a civil malpractice case—they were admitted as experts and testified as Plaintiff's treating physicians, describing Plaintiff's injuries to the jury. The performance of their medical duties in treating Plaintiff was not at issue in this case. Thus, their rendering aid to Juror #2 did not endow them with any prejudicial "halo effect" that caused irreparable damage to the integrity of the trial. We will not disturb the District Court's denial of the mistrial motion.

### C. The District Court Did Not Abuse Its Discretion in Failing to Strike Jury Panel Member #27 For Cause

Our review of a ruling on a motion to strike a juror for cause is for "manifest error—a most deferential standard." *United States v. Nasir*, 17 F.4th 459, 467 (3d Cir.

11

2021) (citing *Skilling*, 561 U.S. at 396). As the Supreme Court has emphasized, jury selection is "particularly within the province of the trial judge," who has the benefit of physically observing a potential juror, listening to their answers, observing their mannerisms, and ultimately deciding whether they can be fair and impartial in a given case. *See Skilling*, 561 U.S. at 386. Accordingly, the Supreme Court has cautioned against "second-guessing the trial judge's estimation of a juror's impartiality." *Id*. (quoting *Ristaino v. Ross*, 424 U.S. 589, 594–595 (1976)).

Nonetheless, Defendants ask us to second-guess the District Court's assessment of Panel Member #27's impartiality. We will not. The District Court, observing Panel Member #27's demeanor, stated that there was "no question in [its] mind" that the juror could be fair and impartial. [JA494.] Defendants argue that Panel Member #27 "openly admitted that because of his son's [disability and wheelchair use], he could not be fair towards Defendants[.]" [Opening Br. at 33.] But while Panel Member #27 stated that he could not put aside thinking about his son while looking at Sweigart, he denied that his son's condition—which, as the District Court noted, was due to a chromosomal disorder, not a car accident—would prevent him from being impartial. Indeed, Panel Member #27 stated unequivocally under questioning by the District Court that he could be fair to both Mr. Sweigart as well as the Defendants. Defendants characterize the District Court's colloquy with Panel Member #27 as "forceful." [Opening Br. at 36]. But when a juror admits concerns about partiality, it is the district court's responsibility to ask follow-up questions "to determine whether [the juror is] actually biased." *Nasir*, 17 F.4th at 468. The District Court did so and, listening to Panel Member #27's answers, concluded that

12

there was no doubt that he could be a fair and impartial juror. Without the benefit of what the District Court saw and heard, we cannot, on a cold record, reverse its decision declining to strike Panel Member #27 for cause.

> **D.** **The District Court Did Not Abuse its Discretion in Instructing the Jury on the Sudden Emergency Doctrine**

Defendants argue that Plaintiff should not have benefited from an instruction on Pennsylvania's sudden emergency doctrine. This doctrine provides that a "person confronted with a sudden and unforeseeable occurrence, because of the shortness of time in which to react, should not be held to the same standard of care as someone confronted with a foreseeable occurrence." *Lockhart v. List*, 665 A.2d 1176, 1180 (Pa. 1995). The sudden emergency doctrine only applies "to a party who suddenly and unexpectedly finds him or herself confronted with a perilous situation which permits little or no opportunity to apprehend the situation and act accordingly." *Id*. Defendants argue that the doctrine does not apply because trial testimony established that it was Plaintiff—not Defendants—who created the emergency by failing to reduce his speed.

We review the District Court's instruction on the sudden emergency doctrine for abuse of discretion, to "determine whether, taken as a whole, the instruction properly apprised the jury of the issues and the applicable law." *Donlin v. Philip Lighting N. Am. Corp.*, 581 F.3d 73, 78–79 (3d Cir. 2009) (citing *Dressler v. Busch Entm't Corp.*, 143 F.3d 778, 780 (3d Cir. 1998)). Even where a jury instruction contains a mistake, that instruction does not constitute a reversible error unless "it fails to fairly and adequately present the issues in the case." *Id.* at 79 (internal quotation marks omitted).

13

We find no error with the District Court's jury instructions. Consistent with Pennsylvania law, the District Court properly balanced the sudden emergency doctrine with an instruction on Pennsylvania's assured clear distance ahead rule. The clear distance ahead rule requires "a driver to control the speed of his or her vehicle so that he or she will be able to stop within the distance of whatever may reasonably be expected to be within the driver's path." *Lockhart*, 665 A.2d at 1180 (emphasis omitted). As the Pennsylvania Supreme Court has explained, "where the evidence is such that reasonable minds could differ as to whether a sudden emergency actually existed, both [the sudden emergency and the assured clear distance ahead] charges should be given." *Id*. at 1183.

Here, reasonable minds could differ as to whether a sudden emergency existed. Sweigart testified that he did not see Patten's truck until he was approximately 550 feet from the intersection. At that point, Patten's truck was creeping towards the intersection. Sweigart did not reduce his speed because he believed that Patten would come to a complete stop prior to turning left through the intersection. By the time Sweigart realized Patten was indeed making a turn, he only had 3.2 seconds to brake. Defendants' own crash reconstructionist conceded that Sweigart could have been travelling at a lawful speed prior to hitting the brakes. So, because Plaintiff introduced testimony creating a reasonable factual dispute regarding whether he found himself in a sudden emergency situation, the jury could have found *either* that Plaintiff was thrust into a sudden emergency *or* that he was driving at a speed greater than would permit him to bring his motorcycle to a stop within any clear distance ahead of the truck. We thus find no error in the District Court's instruction on the sudden emergency doctrine charge.

14

**E.** **The District Court Did Not Abuse Its Discretion in Excluding Evidence of Plaintiff's Lack of a Motorcycle License and the Reckless Riding Videos**

Defendants argue that the District Court erred in excluding evidence of Plaintiff's lack of a motorcycle license and videos of Plaintiff riding his motorcycle recklessly. Accordingly, Defendants argue, "[t]he jury was unable to evaluate relevant evidence bearing on Plaintiff's own negligence." [Opening Br. at 44–45.]. "The admissibility of evidence is within the discretion of the trial judge, and admissibility rulings will not be disturbed on appeal absent an abuse of discretion." *Gordon v. Lewistown Hosp.*, 423 F.3d 184, 215 n.21 (3d Cir. 2005) (citing *Affiliated Mfrs., Inc. v. Aluminum Co. of Am.*, 56 F.3d 521, 525–26 (3d Cir. 1995)). We find no abuse of discretion with respect to the District Court's evidentiary rulings.

### 1. *Plaintiff's Lack of a Motorcycle License*

The District Court, on the record at oral argument, balanced, under Federal Rule of Evidence 403, the probative value of Plaintiff's lack of a motorcycle license against its prejudicial effect. "[W]hen a court engages in a Rule 403 balancing and articulates on the record a rational explanation, we will rarely disturb its ruling." *United States v. Finley*, 726 F.3d 483, 491 (3d Cir. 2013) (internal quotation marks omitted); *United States v. Sussman*, 709 F.3d 155, 173 (3d Cir. 2013) (The District Court's "discretion is construed especially broadly in the context of Rule 403.") (internal quotation marks omitted). The District Court concluded that introduction of Plaintiff's lack of a license, while probative, was simply too prejudicial to be admitted because there was no evidence that there was a causal connection between the accident and Plaintiff's lack of a license and no evidence

15

that Plaintiff did not know how to drive a motorcycle at the time of the accident. Defendants articulate no basis in the record or law that persuades us to the contrary. Defendants argue that they should have been afforded a fair opportunity to counter Plaintiff's competency to operate a motorcycle. But the District Court did afford Defendants that opportunity, just without evidence of Plaintiff's lack of a license. Indeed, Defendants introduced evidence to convince the jury that Plaintiff lacked motorcycle competency, eliciting on cross-examination that Plaintiff (i) had no formal motorcycle training, (ii) was a self-taught motorcyclist, and (iii) that he did not read his motorcycle's owner's manual. We will not disturb the District Court's reasoned decision to exclude evidence of Plaintiff's lack of a motorcycle license.

2.    ***Plaintiff's Reckless Riding Videos***

Nor will we disturb the District Court's discretionary decision to exclude video evidence of Plaintiff riding his motorcycle recklessly. Federal Rule of Evidence 404(b) prohibits the admission of prior bad acts for the purpose of showing that an individual has a propensity or disposition to act in accordance with his prior bad acts. *Ansell v. Green Acres Contracting Co.*, 347 F.3d 515, 520 (3d Cir. 2003). Here, admission of Plaintiff recklessly popping "wheelies" and speeding in the months before the accident could not be introduced to show that Plaintiff was driving recklessly on the morning of the accident. *See Sparks v. Gilley Trucking Co., Inc.*, 992 F.2d 50, 53 (4th Cir. 1993) (Rule 404(b) should have prevented the introduction of evidence of plaintiff's prior speeding tickets)

Recognizing as much, Defendants instead argue that the videos are evidence, under Federal Rule of Evidence 406, of Plaintiff's habit of riding recklessly. Not so. Habit evidence under Rule 406 reflects a "semi-automatic" repeated response in a specific situation. *Becker v. ARCO Chem. Co.*, 207 F.3d 176, 204 (3d Cir. 2000). The videos of Plaintiff's reckless riding offered only snapshots of how Plaintiff rode his bike on a few occasions. Evidence of habit must be both "regular" and "specific." *See* FED. R. EVID. 406 Advisory Committee's Note (describing "habit" as a "regular response to a repeated specific situation"). The videos were neither. They did not establish, for example, that Plaintiff always sped on Morgantown Road—where the accident occurred—or that he always sped early in the morning on Morgantown Road, or any road for that matter.[7] Plaintiff's stunts and speeding simply cannot show that he was stunting or speeding every time he rode his bike. We thus find no abuse of discretion with respect to the District Court's exclusion of the reckless riding videos.

VI.

For the foregoing reasons, we will affirm the judgment of the District Court.

---

[7] One video did involve Plaintiff speeding on Morgantown Road on a Sunday afternoon. While that video would have been probative, albeit inadmissible under Rule 404(b), of the fact that Plaintiff sometimes sped on Morgantown Road, it could not, alone, establish any habit of Plaintiff speeding on Morgantown Road.