# IN THE COURT OF APPEALS OF IOWA

No. 17-1934
Filed October 10, 2018


**MANDI MUMM,**
        Plaintiff-Appellant,

**vs.**

**JENNIE EDMUNDSON MEMORIAL HOSPITAL d/b/a METHODIST JENNIE EDMUNDSON HOSPITAL, EMERGENCY PHYSICIANS OF WESTERN IOWA, L.L.C., and PAUL C. MILERIS, M.D.,**
        Defendants-Appellees.
_____


Appeal from the Iowa District Court for Pottawattamie County, Gregory W. Steensland, Judge.

Mandi Mumm appeals the order denying her motion for new trial after a jury found in favor of the defendants on her medical-malpractice claim. **AFFIRMED.**

Randall J. Shanks and Emily A. Shanks Warren of Shanks Law Firm, Council Bluffs, for appellant.

Michael W. Ellwanger and Laura L. Mommsen of Rawlings, Ellwanger, Mohrhauser & Nelson, L.L.P., Sioux City, for appellee Jennie Edmundson Memorial Hospital.

Mary M. Schott, Thomas J. Shomaker, and Robert A. Mooney of Sodoro Daly Shomaker PC LLO, Omaha, Nebraska, for appellee Emergency Physicians of Western Iowa, L.L.C., and Paul C. Mileris, M.D.


Considered by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**PER CURIAM.**

Mandi Mumm appeals the order denying her motion for new trial after a jury found in favor of the defendants on her medical-malpractice claim.

Our review of rulings on motions for new trial is based on the grounds raised in the motion. *See Jack v. Booth*, 858 N.W.2d 711, 718 (Iowa 2015). Because Mumm's motion was based on the trial court's response to questions received from the jury, our review is for an abuse of discretion. *See* Iowa R. Civ. P. 1.925 ("While the jury is deliberating, the court may in its discretion further instruct the jury, in the presence of or after notice to counsel."); *Jack*, 858 N.W.2d at 718 ("To the extent the motion is based on a discretionary ground, we review it for an abuse of discretion."); *McConnell v. Aluminum Co. of America*, 367 N.W.2d 245, 250 (Iowa 1985) (finding trial court did not abuse its discretion in denying plaintiff's objection to the form of its responses to the jurors' questions). "An abuse of discretion exists when the district court's ruling 'rests upon clearly untenable or unreasonable grounds.'" *Willard v. State*, 893 N.W.2d 52, 58 (Iowa 2017) (citation omitted). A ruling is untenable when the court bases it on an erroneous application of the law. *See State v. Plain*, 898 N.W.2d 801, 811 (Iowa 2017). In other words, an error of law constitutes an abuse of discretion. *State v. Kingery*, No. 17-1529, 2018 WL 3650352, at *2 (Iowa Ct. App. Aug. 1, 2018) (citing *State v. Smith*, 753 N.W.2d 562, 564 (Iowa 2008)).

On appeal, the defendants assert Mumm failed to preserve error in not objecting to the court's response to the jury's question at the time it was made. However, when a court further instructs a jury during deliberations, "any objections thereto shall be made in a motion for new trial." Iowa R. Civ. P. 1.925, *see also*

*Everett v. State*, 789 N.W.2d 151, 156-57 (Iowa 2010); *Olson v. Sumpter*, 728 N.W.2d 844, 849 (Iowa 2007); *State v. McKee*, 312 N.W.2d 907, 915 (Iowa 1981). Mumm did raise the issue in her motion for new trial and properly preserved the error.

The first five questions on the verdict form submitted to the jury were as follows:

> **QUESTION NO. 1:** Was Dr. Paul Mileris negligent?
> Answer "yes" or "no."
> ANSWER: _____
> [If your answer is "no," do not answer any of the following questions.]
> **QUESTION NO. 2:** Was the negligence of Dr. Paul Mileris a cause of any item of damage to Plaintiff?
> Answer "yes" or "no."
> ANSWER: _____
> [If your answer to either Question No. I or No. 2 is "no," then you shall not assign any fault to Dr. Paul Mileris, and you will not answer any further questions.]
> If the answer to both Questions 1 and 2 are yes, then you will answer the following questions.
> **QUESTION NO. 3**: Was CH, Inc., negligent?
> Answer "yes" or "no."
> ANSWER: _____
> [If your answer is "no," do not answer Question No. 4.]
> **QUESTION NO. 4**: Was the negligence of CH, Inc., a cause of any item of damage to Plaintiff?
> Answer "yes" or "no."
> ANSWER: _____
> [If your answer to either Question No. 3 or No. 4 is "no," then you shall not assign any fault to CH, Inc.]
> **QUESTION NO. 5**: What percentage of the total fault do you attribute to Defendant, Dr. Paul Mileris and what percentage of the total fault do you attribute to CH, Inc.? The percentages must total 100%.
> [If you previously found that Defendant Dr. Paul Mileris or CH, Inc., was not at fault, or did not cause damage to Plaintiff, then enter "0" after its name.]
> ANSWER:
> Dr. Paul Mileris                    _____%
> CH, Inc.                    _____%
>                    TOTAL:    100%

During deliberations, the jury sent the court two questions concerning the apportionment of fault between the defendants:

> 1. If we attribute 25% fault to Dr. Paul Mileris and 75% to CH, Inc. would Mandi only get 25% since CH has been released?
> 2. If CH, Inc. has been released how are they still named in the lawsuit?

The court conferred with counsel. Mumm's counsel advocated that the court answer "yes" to the first question and to refer the jury back to the instructions in answer to the second; counsel for the defendants requested that the court refer the jury back to the instructions in response to both questions. The court's written answer to the jury stated, "Please follow the instructions already given to you based upon the evidence presented at trial." Ultimately, the jury returned a verdict form answering "no" to question one, which asked whether Dr. Mileris was negligent. Excepting for the foreperson's signature, the remainder of the verdict form was left blank.

Mumm moved for new trial, alleging the jury's questions about apportionment of fault and its subsequent finding that Dr. Mileris was not negligent indicated it "was clearly confused." In Mumm's view:

> [T]he jury was clearly confused when answering Question 5. First, in order to get to Question 5, the jury would have had to answer Questions 1, 2, 3 and 4 in the affirmative. That would mean that the jury found both Dr. Mileris and CH, Inc. were negligent and that their negligence was a cause of Mandi's damages. For all intents and purposes, the jury was trying to figure out a way to award Mandi 25% of her damages. The jury was obviously confused as to Question 5 and the effect it would have on the damage amount awarded to Mandi. Plaintiff respectfully asserts that the Court should have answered "Yes" to the jury's question to clear up this confusion. By not answering "Yes" and simply referring the jury back to the instructions was an abuse of discretion.

In denying Mumm's motion for new trial, the district court stated:

> While it makes some sense that subsequent questions shouldn't be or need not be discussed until question 1 is answered in the affirmative, it is not particularly realistic to think that juries don't discuss the whole package before going back and answering questions. This Court concludes that the question does not reflect confusion by the jury so much as it reflects a complete discussion of the case by all jurors. It would not be unusual for some jurors to want to discuss other questions in order to help them decide the case. Ultimately, this inheres in the verdict and in the discussions carried on by the jury. This Court finds no reason to set aside or interfere with the jury's judgment in this case.

We are unable to find the district court's ruling rests on clearly untenable or unreasonable grounds. Having found no abuse of discretion, we affirm the order denying Mumm's motion for new trial.

**AFFIRMED.**

All judges concur except Doyle, J who dissents.

**DOYLE, Judge** (dissenting).

I respectfully dissent.  I, too, do not find the district court's reasoning to be clearly untenable or unreasonable.  And having agreed with the majority on that point, the controversy would ordinarily come to an end.

But wait, there's more.

Application of comparative fault principles can be confusing.  For that reason, the legislature has mandated: "If the claim [subject to comparative fault] is tried to a jury, the court *shall* give instructions and permit evidence and argument with respect to the effects of the answers to be returned to the interrogatories submitted under this section."  Iowa Code § 668.3(5) (2017) (emphasis added).[1] Presumably, Iowa Civil Jury Instruction 400.3, entitled "Comparative Fault – Effects of Verdict," was drafted to implement the statutory mandate.  Instruction 400.3 provides:

> After you have compared the conduct of all parties, if you find the plaintiff, _____, was at fault and the plaintiff's fault was more than 50% of the total fault, the plaintiff, _____, cannot recover damages.
> However, if you find the plaintiff's fault was 50% or less of the total fault, then I will reduce the total damages by the percentage of plaintiff's fault.

Seemingly, Instruction 400.3 would have no applicability to this case as there was no contention Mumm was at fault.  It naturally follows that the instruction was not requested by either party and was not given upon submission of the case to the jury.  But that does not end the matter.  The jury was asked to compare the fault,

---

[1] A transcript of the trial was not ordered, so we do not know what the lawyers argued to the jury with respect to the effects of the answers to be returned to the comparative fault interrogatories.  Iowa Code section 668.3(5) was not raised or argued on appeal.

if any, between Dr. Mileris and CH, Inc., a released defendant. Confused, or merely curious, the jury asked the court: "If we attribute 25% fault to Dr. Paul Mileris and 75% to CH, Inc. would Mandi only get 25% since CH has been released?" Clearly, the jury wanted to know the effects of the application of comparative fault upon its answers to interrogatories—and it was entitled to know. Submitting uniform instruction 400.3, as suggested below, would have satisfied the jury's legitimate quest for answers.

Although the body of uniform instruction 400.3 does not fit the facts of this case, there is language in the comments section following the instruction that does. Several notes in the comments section to the instruction explain the effects of the application of comparative fault in various situations:

> Note: 1. Where consortium claims are involved, the fault of the person whose injury or death provides the basis for the consortium claim does bar or reduce the consortium recovery. Iowa Code section 668.3(1)(b), *overturning Schwennen v. Abell*, 430 N.W.2d 98 (Iowa 1988).
>
> Note: 2. When the jury will be asked to allocate fault among more than two "parties" as defined in Iowa Code section 668.2, add: If you assign to a party less than 50% of the total fault, that party will only be liable to the extent of the percentage of fault assigned by you. Where concert of action among two or more parties is alleged, *see Reilly v. Anderson*, 727 N.W.2d 102 (Iowa 2007).
>
> Note: 3. When there is more than one defendant, plaintiff can claim the entire amount of [earning capacity] [medical expenses] [other economic damages] awarded to the plaintiff from any defendant whose percentage of fault is found by you to be 50% or more.
>
> Note: 4. If the jury is asked to compare fault of a third party defendant or more than one defendant, add; I will order the [defendants] [and third party defendant] to contribute to the payment of damages awarded on the basis of the percentages of fault you insert in your answers to the questions at the end of these instructions.
>
> Note: 5. When there is a settling party, add: If you assign a percentage of fault to the settling party, I will reduce the amount of plaintiff's recovery by that percentage.

Notes 2 and 5 are applicable here, and the court should have answered:

> If you assign to a party less than 50% of the total fault, that party will only be liable to the extent of the percentage of fault assigned by you," and "If you assign a percentage of fault to the settling party, I will reduce the amount of plaintiff's recovery by that percentage.

Of course, by simply answering the jury's first question, "Yes," as requested by Mumm, would have accomplished the same purpose as giving the language suggested in notes 2 and 5—and probably would have been less confusing.

"Jury instructions 'must convey the applicable law in such a way that the jury has a clear understanding of the issues it must decide.'" *Rivera v. Woodward Res. Ctr.*, 865 N.W.2d 887, 892 (Iowa 2015) (quoting *Thompson v. City of Des Moines*, 564 N.W.2d 839, 846 (Iowa 1997)). Section 668.3(5) mandates a court inform the jury of the effects of comparative fault as applied to the jury's answers concerning fault. The court's failure to answer the jury's first question runs counter to the statutory mandate, and I conclude the court erred.

Next, was the error prejudicial to Mumm? Instructional errors do not merit reversal unless prejudice results. *See DeBoom v. Raining Rose, Inc.*, 772 N.W.2d 1, 5 (Iowa 2009). Prejudice occurs and reversal is required when jury instructions contain a "material misstatement of the law" or are misleading or confusing. *Rivera*, 865 N.W.2d at 902. "We assume prejudice unless the record affirmatively establishes that there was no prejudice." *Id.* at 903. "When an instruction fails to convey a central principle of liability, this warrants a new trial." *Haskenhoff v. Homeland Energy Sols., LLC*, 897 N.W.2d 553, 579 (Iowa 2017) (internal citations omitted). I think the same can be said for the failure to convey the effects of the application of comparative fault. Here, the instructions failed to convey to the jury

how application of comparative fault to its answers to interrogatories affected its verdict. Although it asked, the jury was not informed that allocating 25% fault to Dr. Mileris would limit his liability to that percentage and that allocating 75% fault to CH would reduce Mumm's total damages recovery by that amount.

With the failure to meet the mandate to be fully informed under section 668.3(5), particularly in view of the jury's question, the jury was left with a material omission of the law. I believe this omission to be the substantial equivalent of a material misstatement of the law. And, although the jury was not affirmatively misled by the instructions, it was not led at all.

With no guidance, the jury was left to blindly flop around on its own in those murky waters of comparative fault. I cannot say justice was served under the particular circumstances presented. I therefore believe Mumm is entitled to a new trial, *see id*. at 579-81, and I would reverse the order denying Mumm's motion for new trial and remand for further proceedings.